## STATE *v.* ROBERT A. OWEN.

Where upon an indictment for murder, several persons were sworn, in the regular way, as to their competency to serve as jurors, and held the Bible in their hands until they were accepted, when the clerk proceeded to swear them as jurors, omitting the words " you swear " in the last oath: *It was held*, that the omission though irregular and reprehensible, did not vitiate the verdict.

Where the presiding Judge, on a trial of an indictment for murder, charged the jury: "The State's counsel says, he has introduced Dr. Richardson, an intelligent physician, who gives it as his decided opinion, after hearing all the testimony, " that the deceased came to his death by strangulation and not by poison, and that this ought to have great weight with the jury; and then immediately added: "It is true the opinion of experts ought to have weight with the jury, as they are familiar with these questions, but the jury are not concluded by their opinions; if the evidence justifies, they may find against such opinion. They must find the facts upon the whole evidence: *Held*, that this was not an expression of opinion, and not prejudicial to the prisoner.

(*State* v. *Cunningham*, at this term, affirmed.)

INDICTMENT for MURDER, tried before *Schenck*, *J.*, at the Fall Term, 1874, LINCOLN Superior Court.

The prisoner Robert A. Owen, was charged with the mur-

der of John W. Cheek, in the county of Gaston, on the 24th of September, 1873.

The case was removed from Gaston county upon the affidavit of the prisoner, and when called on the first Tuesday o f the Fall Term of Lincoln Superior Court, was continued on the affidavit of the prosecutor, suggesting a diminution of the transcript of the record sent from the Superior Court of Gaston county.

A *certiorari* was issued to the Clerk of the Superior Court of said county commanding him to send a perfect copy of the record in this case to Lincoln Superior Court, and on the next day E. H. Withers, Clerk of that Court, returned a record in the case as a perfect record thereof, which record was filed in the Superior Court of Lincoln county.

The case was again continued, upon the affidavit of the prisoner, until Tuesday of the second week of the term, on account of the absence of material witnesses. On Tuesday of the second week of the term the case was again called, and before going into the trial, the counsel for the prisoner suggested a diminution of the record in the case, in that, it did not show an order for removal in the case from Gaston to Lincoln.

The Court being satisfied from the first, and amended record filed in the case, that there was no diminution, and because that one *certiorari* had already issued in the case, and a return been made thereon, overruled the motion for a *certiorari*. The defendant excepted and the exception was overruled. The trial proceeded, and after the original panel was exhausted the prisoner challenged the array of the special *venire*, because the Court had no power to continue the special *venire* from the day on which they were summoned to attend, to Tuesday of the second week. The challenge was overruled and the prisoner except.

One of the special *venire* having been challenged for cause by the defendant, and sworn, was asked if he had paid his taxes for the year 1874, to which he replied that he had not, but

stated in answer to the Court that he had paid his taxes for the year, 1873.

The defendant challenged him for cause, assigning as the cause that he had not paid his taxes for 1874.

The challenge was overruled by the Court and the defendant excepted.

One Samuel Black of the special *venire* had been stood aside by the State, and when recalled and sworn, no cause was found for challenge. The State then challenged him peremptorily. The defendant excepted.

The requisite number of jurors being obtained, before they were empannelled, the prisoner asked to be permitted to withdraw his plea of "not guilty," and to plead in abatement, and offered to file his plea, which he had prepared.

The Court refused to allow the plea of not guilty to be withdrawn, or the plea in abatement to be filed. Defendant excepted.

When the jurors were called and challenged, the Clerk caused them to place their hands on the Bible and said, "You swear that you will true answer make to such questions as may be asked you touching your competency as a juror," and made them retain the Bible in their hands, and when the prisoner answered that "he liked him," the Clerk continued in these words as to several of the jurors, "you will well and truly try and true deliverance make between the State and the prisoner at the bar, whom you shall have in charge, and a true verdict give according to the evidence ; so help you God," and the jurors kissed the Bible and were seated in the box.

The word "swear" or "affirm" were omitted in several instances between the words "you" and "will well and truly," &c., in the latter part of the oath.

A member of the bar called the attention of the counsel of the prisoner to the omission, but no exception was made to it. The Court was not aware of the omission, nor was its attention called to it, and the matter was not alluded to until after the trial. After the jurors were all seated the Court, in hear--

ing of the counsel for the defendant asked them whether they had all been sworn, and they responded in the affirmative, and were regularly empannelled by the Clerk. No exception was made by the defendant's counsel.

No evidence was introduced by the defendant. The evidence for the State showed that on Monday the 22d day of September, 1873, the prisoner and the deceased left York county, South Carolina, in a two horse wagon belonging to deceased, and came to North Carolina for the purpose of buying a plantation for the deceased. They went as far as Shelby on Tuesday, and perhaps farther, on Wednesday they were again in Shelby drinking, and the prisoner and the deceased had angry words about the prisoner taking some money of the deceased, as prisoner said to take care of it, and there was some evidence of the drugging of the liquor which they bought by the prisoner. Thursday they left Shelby, and on Friday morning about 9 o'clock, were in Dallas, Gaston county, both were strangers in Gaston county especially the deceased, who knew no one, and was known by no one, so far as the testimony showed. On that day, Friday, at nine o'clock, the deceased was in the wagon, seemingly asleep and insensible, the prisoner alleging that he was drunk and giving him great trouble.

On the same day at 10 o'clock the prisoner went with the wagon to Joseph Thornberg's seven miles west of Dallas, deceased was still in the wagon in an insensible state and remained so until 3 o'clock, at which time the prisoner drove off, as he said, to meet another wagon, and send the deceased home. The prisoner returned to Thornberg's about dusk, the deceased not being with him, and the prisoner alleged that he had sent the deceased on home in another wagon. The next morning the prisoner left with one of the horses and was not caught until December. On Saturday morning suspicions being aroused, and blood found in the wagon and on the clothes, search was made and the body of a deceased person was found behind a pine log, with a pistol shot ranging from near the left nipple, around the left side where it came out and passed

through the arm. The body also had a half inch hemp rope tied tightly around the neck, sunk into the flesh, and the face was swollen and discolored. The trail where the body was dragged was also discovered. The body was found on Saturday about 3 o'clock P. M.

One B. M. Carpenter stated that he saw the body Saturday night where it was found, that a crowd had assembled to hold an inquest. That he examined the pockets of the deceased before he was stripped, to see if he could find any memorandum or papers by which he could identify the person of the deceased. The witness was asked " what he found on the body or in the pockets." The prisoner's counsel excepted to this question, and the exception was overruled by the Court. The witness stated that he found a small memorandum or pocket-book in the pocket of the deceased, which was exhibited. Witness said it contained names of people living in South Carolina, memoranda, and a five cent piece and two pair of spectacles, one with and the other without a case.

There was evidence given by the State to fix the prisoner with the murder of the deceased. The prisoner introduced no evidence and it was argued to the jury upon the evidence introduced by the State.

The counsel for the defence asked the Court to charge the jury: 1st. That if the jury had a reasonable doubt, which way the deceased came to his death, the prisoner was entitled to a verdict.

2nd. That if they had a reasonable doubt, that the deceased came to his death in manner and form as charged by the bill of indictment, the defendant should be acquitted.

The Court after defining murder as the "killing of a fellow-being in malice," charged the jury, that it was the duty of the State to satisfy their minds beyond a reasonable doubt, 1st. That the prisoner killed the deceased.

2nd. That he killed him as charged in the bill of indictment by a pistol shot or by strangulation.

3rd. That if they had a reasonable doubt whether the

39

deceased came to his death by the means charged in the indictment, the prisoner was entitled to the doubt and they must acquit.

The Court recited the whole testimony given in the case and summed up the argument of the counsel on either side. In stating the argument for the prosecution the Court used this language, " The State's counsel says he has introduced Dr. Richardson, an intelligent physician, who gives it as his decided opinion, after hearing all the testimony, that deceased came to his death by strangulation and not by poison, and that this ought to have great weight with the jury." The Court added, " It is true that the opinion of experts ought to have weight with the jury as they are familiar with these questions, but the jury are not concluded by their opinion ; that if the evidence justified they might find against such opinion; that they must find the facts on the whole evidence."

The jury returned a verdict of guilty of the felony and murder as charged in the bill of indictment.

The counsel for the prisoner then moved the Court for a new trial, 1st. Because of error in overruling the challenge in the case of the juror Peter ———.

2nd. Because of error in overruling the objection to Carpenter's testimony.

3rd. Because of error in refusing to allow the plea of " not guilty " to be withdrawn, and a plea in abatement filed.

4th. Because of error in the charge in regard to Dr. Richardson's testimony.

5th. Because the jurors were not properly sworn.

The motion for a new trial was overruled, and the defendant moved in arrest of judgment, on the following grounds :

1st. That the jurors were not properly sworn.

2nd. That the word " given " is used in the indictment instead of " giving."

3rd. That the transcript does not show that the case was removed to the county of Lincoln.

The motion was overruled, and the prisoner appealed.

*Hoke* and *Bailey*, for the prisoner.
*Attorney General Hargrove*, for the State.

SETTLE, J. The record shows that several exceptions were taken to the rulings of his Honor during the progress of the trial, but only two of them were insisted upon in this Court. Treating the others as abandoned, and a casual glance will suffice to show that they were properly abandoned, we will only notice those which were pressed upon the argument here.

2. The jurors were not properly sworn. The facts, as we find them in the record, are as follows: When the jurors were called and challenged, the Clerk caused them to place their hand on the Bible, and said: "You swear that you will true answers make to such questions as may be asked you touching your competency as a juror." The jurors were required to retain the Bible in their hand, and when they were accepted by the prisoner, the Clerk continued in these words, as to several of the jurors: "You will well and truly try and true deliverance make between the State and the prisoners at the bar, whom you shall have in charge, and a true verdict give according to your evidence. So help you God." And the juror would then kiss the Bible and take his seat in the box.

The word "swear" or "affirm" was omitted in several instances between the words *you* and *will well and truly, &c.,* in the oath. No exception was made to this manner of administering the oath, although the attention of the prisoner's counsel was called to it at the time. The Court was not aware of the omission until after the trial was over. After the twelve jurors had been seated, the Court asked them if they had all been sworn, and they responded in the affirmative, and were regularly empanelled without exception from the prisoner.

After the frequent admonitions from the Courts, not to depart from established forms and precedents, it would seem useless to say more on the subject, for it is all evidently lost

upon many of those who do not hesitate to assume the responsibility of office.

Why the Clerk, with the oath prescribed for jurors in capital cases before him, should have presumed to have experimented in changing it, is only to be accounted for upon the supposition that he does not appreciate the importance of such matters. He doubtless thought that the words "you swear," at the commencement of the oath of jurors, to answer questions touching their competency to serve as jurors, might be referred to the second oath, which they took after their acceptance as jurors, they retaining the Bible in their hand all the time, and this perhaps may be so. But independently of that, the essential requirements of the law are that the party sworn "shall lay his hand upon the Holy Evangelist of Almighty God," and after the oath is administered he shall invoke the blessing or the curse of God by repeating the words "So help me God," and shall kiss the holy gospel as a seal of confirmation to his engagements. Bat. Rev. ch. 77, sec. 1.

In the case at bar, all of this was done. Although the omission of the words "you swear" at the commencement of the oath, looks awkward and mars the comeliness of judicial proceedings, we do not think that it vitiates the oath.

2. The prisoner excepts to the charge of his Honor in reference to the testimony of Dr. Richardson. He contends that it amounted to an expression of opinion to his prejudice by his Honor.

After reciting the whole testimony in the case, his Honor summed up the arguments of counsel, both for the prisoner and the State. In stating the argument for the prosecution, he said: "The State's counsel has introduced Dr. Richardson, an intelligent physician, who gives it as his decided opinion, after hearing all the testimony, that the deceased came to his death by strangulation, and not by poison, and that this ought to have great weight with the jury." But his Honor immediately added: "It is true the opinion of experts ought to have weight with the jury as they are familiar with

these questions, but the jury are not concluded by their opinion; if the evidence justifies, they may find against such opinion; they must find the fact upon the whole evidence."

This was more of a reply to the position assumed by the State's counsel, than an unqualified endorsement of the same, and was calculated to give the jury a fair view of the question involved in Dr. Richardson's testimony, to-wit, the manner in which the deceased came to his death; and to explain to them their duty in reference to the decision of that question. The charge is not open to the criticism which has been made upon it.

Another question, which arises upon the record, in consequence of the removal of the case from one county to another, has been decided at this term, in the case of the *State v. Cunningham.* On this point we content ourselves with a reference to that case.

The judgment of the Superior Court is affirmed.

PER CURIAM.                              Judgment affirmed.