F. FLYNT, Adm'r of Daniel Speace, v. T. H. BODENHAMER.

*Expert—Judge's Charge—Evidence.*

1. A physician of thirty years experience in the practice of his profession is an expert.

2. Upon an issue involving the mental condition of a party to a contract, the court charged the jury in regard to the evidence of a physician of thirty years standing, " that the law attaches peculiar importance to the opinion of medical men who have the opportunity of observation upon a question of mental capacity, as by study and experience they become experts in the matter of bodily and mental ailments ;" *Held*, to be no invasion of the province of the jury.

(*State* v. *Ellington*, 7 Ire., 61 ; *Nash's case*, 8 Ire., 35 ; *Nat's case*, 6 Jones, 114 ; *Owen's*, 72 N. C., 605, cited and approved.)

CIVIL ACTION tried at Spring Term, 1878, of FORSYTH Superior court, before *Buxton, J.*

The action was brought to recover the amount of a note executed by defendant to plaintiff's intestate. The plaintiff alleged that defendant had improperly obtained possession of the note from his intestate a few days before his death, when he was in such mental condition as incapacitated him for business. The defendant resisted a recovery on the ground that he had agreed to take care of plaintiff's intestate while he lived, and in consideration thereof the intestate surrendered the note. The opinion contains the facts touching the point decided in this court. Judgment for plaintiff, appeal by defendant.

Messrs. *Watson & Glenn*, for plaintiff.
Messrs. *J. M. Clement* and *J. M. McCorkle*, for defendant.

SMITH, C. J. The merits of the case are involved in a single enquiry submitted to the jury : "Did the defendant by fraud or undue influence wrongfully obtain from the

plaintiff's intestate the note sued on? And to this the jury responded in the affirmative.

During the trial many witnesses were examined as to the mental condition and capacity of the intestate, two of whom were present when the alleged surrender was made, and testified that the intestate fully understood what he was doing. Doctor Beverly Jones, introduced by the plaintiff, testified that he was a regular practicing physician of thirty years standing and attended the deceased in his last illness. He explained the nature of his disease and its usual effect upon the brain and mental faculties, and expressed the opinion that he was incapacitated to understand or engage in any business transaction for a period preceding his death, during which the defendant obtained possession of his note.

Several instructions were asked by the defendant's counsel, all of which were given, and among them one in these words: "In determining the condition of Daniel Speace's mind, much weight should be attached to the actions and conduct of said Speace at the time of the alleged delivery of the note in controversy to the defendant," to which His Honor added, "the law likewise attaches peculiar importance to the opinion of medical men who have the opportunity of observation upon a question of mental capacity, as by study and experience in the practice of their profession they become experts in the matter of bodily and mental ailments." Two objections are offered to this part of the charge, in that:

1. It does not sufficiently appear that Dr. Jones possessed those qualifications required in an *expert* so as to give additional force to his opinion.

2. That the language conveys an *expression of opinion as to the weight of the evidence.*

We think the charge obnoxious to neither objection. An expert is defined by Worcester, following Burrill, as "a person having skill, experience or peculiar knowledge on cer-

tain subjects or in certain professions;" and by Bouvier, as "*one instructed by experience.*" The court must decide whether the witness has had the necessary experience to enable him to testify as an expert. But the value of his opinion when admissible must be determined by the jury alone, and depends upon the opportunities he has had for acquiring skill and knowledge, and the use he has made of those opportunities. If a regular and continuous practice in his profession for thirty years does not entitle the witness to be regarded as an expert, or *experienced physician,* it is difficult to conceive what would do so.

Nor do we consider the criticism upon the language of the judge as invading the province of the jury, well founded. Mere opinions predicated upon the testimony of others when they proceed from those who have special skill and experience in a profession or employment, are competent and proper to be heard by the jury and are often valuable aids in conducting them to a correct conclusion. There are, however, hypothetical opinions only, dependent upon the fullness and accuracy of the facts to which they apply for their value, and it is to this kind of evidence that the disparaging remarks quoted by the defendant's counsel from certain law writers are mainly directed. But the opinion of a well instructed and experienced medical man upon a matter within the scope of his profession, and based on personal observation and knowledge, is and ought to be carefully considered and weighed by the jury in rendering their verdict; and this substantially is the comment of the court.

A few cases will be referred to for the purpose of illustration: In *State* v. *Ellington,* 7 Ire., 61, the mother and sister of the prisoner had been examined on his behalf, and referring to their testimony the court told the jury, "that it was for them to say whether those witnesses had testified truly, notwithstanding their relation to the prisoner, or had yielded to that human infirmity, to which we are liable, and had

testified falsely in favor of their son and brother." Reviewing the charge, the court say: " His Honor did not express an opinion upon any fact in controversy, but merely applied a *rule of law* to an admitted fact." In *State* v. *Nash*, 8 Ire., 35, the court charged "that the law regarded with suspicion the testimony of near relations when testifying for each other, and that it was the province of the jury to consider and decide on the weight due to the testimony," and it was declared not to be error. So it was held in *State* v. *Nat*, 6 Jones, 114, not improper for the judge to say to the jury that "when near relations deposed for near relations their testimony was to be received and ought to be received with many grains of allowance," and to extend the rule to the testimony of fellow servants of the prisoner. In a more recent case—*State* v. *Owen*, 72 N. C., 605,—the charge contained these words: "It is true that the opinion of experts ought to have weight with the jury as they are familiar with these questions, but the jury are not concluded by their opinion; that if the evidence justified, they might find against such opinion, and that they must find the facts upon the whole evidence;" and it was decided that the instruction was unexceptionable.

It cannot admit of question that the opinion of the medical expert who attended the deceased during his last fatal illness and must have become familiar with his disease and its effects upon both body and mind, should have greater weight and possess a higher value in determining his mental as well as physical condition than the opinion of an unprofessional man. As this is the dictate of common reason it was not improper in the judge to say so. The charge manifestly refers to the *opinion itself* as *evidence* in the cause, and not to the credibility of the witness who gives the opinion. The credit due to the witness belongs to the jury to determine and with them it is left.

No error. Affirmed.