## IN THE MATTER OF THE WILL OF SUSAN W. JOHNSON, DECEASED

### No. 7611SC738

#### (Filed 6 April 1977)

**1. Evidence § 25— aerial photographs — admissibility**

Aerial photographs are admissible in evidence upon the same basis as other types of photographs.

**2. Wills § 19— caveat proceeding — aerial photograph — admission proper**

The trial court in a caveat proceeding did not err in allowing into evidence aerial photographs of the tracts of land owned by the testatrix at her death, where a witness testified that the photographs were copies of those in the ASCS Office, and the witness used them to illustrate his testimony by locating on them the tracts of land referred to in the will in question.

**3. Wills § 23— caveat proceeding — doctor's testimony — requested instruction properly denied**

The trial court in a caveat proceeding did not err in failing to present to the jury the caveator's requested instruction that the jury could give "some importance" to the testimony of caveator's expert medical witness who had examined testatrix "because he is a medical doctor who was expressing an opinion based on his personal observation and knowledge of the testator" and "[t]he law attaches peculiar importance to the opinion of medical men. . . . "

APPEAL by caveator from *Clark, Judge.* Judgment entered 3 May 1976 in Superior Court, HARNETT County. Heard in the Court of Appeals 15 February 1977.

In this caveat proceeding, it appears that Susan W. Johnson executed her purported will on 30 October 1974 in the presence of three subscribing witnesses and Marshall Woodall, the attorney who prepared the will. She died in March 1975, at the age of 85 or 86 years. The will was probated in common form on 24 March 1975, and letters testamentary were issued to Paul Johnson as Executor. Gertrude J. Lane filed a caveat to the will on 12 March 1976. Paul Johnson and Gertrude J. Lane are the children and only heirs of Susan W. Johnson, deceased.

In summary, the will of Susan W. Johnson recited that Paul Johnson had always lived with her, having dropped out of school to work on the farm when her husband (Paul's father) became disabled; that since her husband's death Paul had looked after her welfare; that she requested him not to buy

In re Johnson

a farm but to remain with her and manage her farming interests; and that he had done so. The will further recited that she had given to her daughter, Gertrude J. Lane, a college education and various gifts of money and other property over the years. The will devised all personal property and the homeplace to her son, a 50.88-acre tract to her son and daughter as tenants in common, her lands in Grove Township to each in separate parcels, and the balance of her real estate to her son.

At trial the evidence for the caveator tended to show that in July 1973 Susan W. Johnson had "blackout spells" and was confined in the hospital for six weeks and was readmitted several times thereafter. Her ailments were diagnosed by Dr. William Adair as "bulbar stroke," heart failure, and "mental deterioration" resulting from cerebral arteriosclerosis. Dr. Adair testified that when he last saw her in November 1973 it was his opinion that "it would have been impossible (for her) to understand anything that she might intend to do." He then transferred her from the hospital to the Falcon Nursing Home, where she remained until her death in March 1975. While there she was irrational and suffered illusions. The caveator visited her in September 1974, about a month before the will was executed, and it was her opinion that neither then, nor any time thereafter, did testatrix have sufficient mental capacity to make a will. Dr. Charles W. Byrd testified that he saw the testatrix on 23 July 1974 and in his opinion she was not capable of "making decisions" and did not have the mental capacity to make a will.

The evidence for the propounder tended to show that Marshall Woodall, the attorney who prepared the will, knew that Mrs. Johnson had suffered a stroke, but he had had the opportunity to talk to and observe her, and in his opinion she had sufficient mental capacity to make a will on the date she executed it. A nurse's aid who took Mrs. Johnson from the nursing home to her home for the purpose of executing the will testified that the testatrix was alert, and in her opinion was very capable and had the mental capacity to make a will. It was the opinion of three subscribing witnesses that at the time of execution testatrix had the mental capacity to make a will.

The usual execution, mental capacity, undue influence, and paper writing issues were submitted to the jury, and all issues

were answered in favor of the propounder. From the judgment entered, caveator appealed.

*Morgan, Bryan, Jones, Johnson, Hunter & Greene by James M. Johnson for caveator appellant.*

*Stewart & Hayes, P.A. by Gerald W. Hayes, Jr., for propounder appellee.*

CLARK, Judge.

The caveator assigns as error the admission into evidence of the aerial photographs of the tracts of land owned by Mrs. Johnson at the time of her death. Authentication testimony does not appear in the record on appeal in question and answer form. The record reveals that propounder's witness, Marshall Woodall, testified that the aerial photographs were copies of those in the ASCS Office, that they showed the tracts of land referred to in the will of Mrs. Johnson; that he could illustrate the testimony by locating the tracts on the aerial photographs, and that he did so by outlining them in red.

[1, 2] "The same general principles which apply to the admissibility of photographs generally apply to aerial photographs. . . ." 29 Am. Jur. 2d, Evidence § 796 (1967). See Annot., 57 A.L.R. 2d 1351 (1958). "[A]n aerial photograph is admissible in evidence on the same basis as a photograph of any other type." 3 C. Scott, Photographic Evidence § 1411 (2d ed. 1969). Under some circumstances expertise may be required for both authentication and interpretation of an aerial photograph, but in the case before us the aerial photographs were admitted in evidence for use by the witness Marshall Woodall, attorney who prepared the will, for the simple purpose of illustrating his testimony by locating thereon the tracts of land referred to and devised to testatrix's two children. A photograph must "be identified as portraying the scene with sufficient accuracy, but it need not have been made by the witness himself, provided he can testify to its adequacy as a representation." 1 Stansbury, N. C. Evidence § 34 (Brandis Rev. 1973). The evidence is sufficient to identify the aerial photographs as representing the scenes depicted.

To support his assignment of error the caveator relies on *Gragg v. Burns,* 9 N.C. App. 240, 175 S.E. 2d 774 (1970), where the court found prejudicial error in the admission of a large

aerial photograph from the Caldwell County Tax Office, purportedly portraying the section of Caldwell County in which the road in controversy was located. The court stated: "The assignment of error is well taken for the primary reason that the photograph or map was not properly authenticated. . . ." 9 N.C. App. at 242, 175 S.E. 2d at 776. We do not find this case controlling because, *sub judice,* there was proper authentication. Further, assuming *arguendo* that there was error in the admission of the aerial photographs, it does not appear that their admission was prejudicial to the caveator.

[3] The caveator's other assignment of error is that the court failed to present to the jury the following requested instructions:

> "I charge you that in connection with Dr. Adair's testimony, you can give some importance to his opinion, because he is a medical doctor who testified upon a matter within the scope of his profession and based on his personal observations and knowledge of the testator. But, I further charge you that you are the triers of the facts and not the witnesses, not even an expert witness. So after listening to Dr. Adair's testimony, although you are not bound by it, you can give some weight to the fact that he is a medical doctor who was expressing an opinion based on his personal observation and knowledge of the testator. The law attaches peculiar importance to the opinion of medical men who have the opportunity of observation upon a question of mental capacity, as by study and experience in the practice of their profession, they become experts in the matter of bodily and mental ailments."

The caveator offered the instructions in reliance on *Flynt v. Bodenhamer,* 80 N.C. 205 (1879), *In re Peterson,* 136 N.C. 13, 48 S.E. 561 (1904), and *In re Holland,* 16 N.C. App. 398, 192 S.E. 2d 98 (1972), *cert. denied,* 282 N.C. 581, 193 S.E. 2d 743 (1973). In *Flynt* the trial judge had instructed the jury "that the law attaches peculiar importance to the opinion of medical men who have the opportunity of observation upon a question of mental capacity, as by study and experience they become experts in the matter of bodily and mental ailments." 80 N.C. at 206. On appeal the court found no error. In *Peterson,* two physicians who had not observed the testator testified for the caveators, and two physicians who had observed the testator

testified for the propounder. At the request of caveators the trial court had instructed the jury in part that "the law attaches peculiar importance to the opinion of medical men upon the question of mental capacity. . . ." 136 N.C. at 23, 48 S.E. at 565. In finding error, the court stated: "It would seem that the safer rule would be to permit the entire evidence to go to the jury to be weighed and considered by them in the light of all the other evidence upon the question." 136 N.C. at 26, 48 S.E. at 566. In *Holland,* the trial court had instructed the jury in part that it could give some importance to the opinion of the physcian witness, " 'perhaps more than you would to another witness, because he is a doctor. . . .' " 16 N.C. App. at 399, 192 S.E. 2d at 99. On appeal it was held that the instruction was an expression of opinion in violation of G.S. 1A-1, Rule 51(a). We conclude that though *Flynt* has not been expressly overruled, both *Peterson* and *Holland* reject it by implication. Dr. Adair did not have the opportunity of observing the testatrix for several months prior to her execution of the will. Lay witnesses observed her on and near the day of execution. Under these circumstances the rejection of the requested instructions by the trial court was not error.

No error.

Judges BRITT and HEDRICK concur.