NATIONAL BANK OF GREENSBORO et al v. J. E. GILMER et al.

*Action to Set Aside Deed as Fraudulent—Fraudulent Conveyance—Badges of Fraud—Consideration—Dealings Between Father and Son—Special Term of Court, Extending into Regular Term—Trial—Remarks to Jury.*

1. It is not improper for the trial Judge upon the continued disagreement of a jury, to have them brought before him and to impress upon them the necessity of their reasoning together, instead of being obstinate, and of coming to an early conclusion.

2. Where a trial began on Wednesday of the last week of a special term and the jury had not agreed upon a verdict on Saturday night, it was not improper for the trial Judge to open and conduct the regular term on Monday following and to continue the special term into that week for the purpose of receiving the verdict of the jury, since the rights of the parties were not prejudiced thereby.

3. In an action to set aside as fraudulent a deed from the defendant to his sons, it appeared in evidence that the defendant, prior to the purchase of the land by him, was indebted to his wife on certain notes; that there was a verbal agreement between him and his wife that he should buy a lot and build a factory thereon and hold the same in trust for her sons; that he bought a lot and built a factory thereon (but with money of a firm of which he was a member) and subsequently acquired the entire property; that the agreement with his wife remained executory and the notes unpaid at the time of the death of his wife and that thereafter he became insolvent and conveyed the lot and factory to his sons. *Held*, that such evidence was not sufficient to be submitted to the jury as establishing a trust in favor of the sons, and it was error to refuse an instruction that the deed was without consideration and void as to creditors.

4. In the trial of an action to set aside as fraudulent a conveyance of a stock of goods by the defendant to his son, it appeared (1) that the defendant was indebted at the time of the conveyance; (2) that the sale was to a son; (3) on long credit; (4) without security; and (5) that the son was not worth more than $500 at the time; (6) that the defendant, though not insolvent at the time, was embarrassed by debt and heavy endorsement for others, and (7) that he became insolvent thereafter. *Held*, that neither of these facts, nor all combined, amount to *prima facie* proof of fraud, but they were circumstances calculated to excite suspicion and challenge scrutiny as to the intent with which the conveyance was made.

5. Upon testimony tending to prove such suspicious circumstances, it was the duty of the Court, in instructing the jury, to denominate them, not as " evidential facts bearing upon the issue," but as badges of fraud or circumstances tending to show fraud and that evidence explanatory thereof should be scrutinized with care.

6. While the act of 1893 (Ch. 453) does not prohibit *bona fide* mortgages to secure one or more pre-existing debts, yet where a mortgage is made of the entirety of a large estate for a pre-existing debt (omitting only an insignificant remnant of property) the mortgage is in effect an assignment for the benefit of creditors secured therein, and is subject to the regulations prescribed in said Act of 1893.

7. Under the act regulating assignments for benefit of creditors (Ch. 453, Acts of 1893) the failure of the assignor to file the schedule of preferred debts as required in said Act, renders the deed of assignment void as to attacking creditors.

CIVIL ACTION, tried before *Battle, J.*, and a jury, at a Special Term of the Superior Court of FORSYTH county, which began on Monday, the 26th day of November, 1894. The plaintiffs, the National Bank of Greensboro, Rowe Wiggins and the Atlantic National Bank of Wilmington, North Carolina, being judgment creditors of the defendant J. E. Gilmer, brought this action for the purpose, as is alleged in their complaint, of setting aside and declaring fraudulent and void certain conveyances and deeds of trust

made by the defendant J. E. Gilmer; one being a deed of trust made by-the defendant J. E. Gilmer to the defendant J. W. Shepherd, Trustee; another being an absolute deed conveying certain real estate to his two sons, the defendants John L. Gilmer and Powell Gilmer; and the other being the transfer and sale of a stock of goods to the said John L. and Powell Gilmer.

The plaintiffs further allege that at the time of these conveyances, the defendant J. E. Gilmer was insolvent, and that the said conveyances were made for the purpose of hindering, delaying and defrauding the plaintiffs, all of whom were creditors of the said J. E. Gilmer at the time of the said conveyance.

The defendants J. E. Gilmer, J. L. Gilmer and Powell ·Gilmer—the latter by their guardian J. E. Gilmer—filed their joint answer admitting the judgments recovered against the said J. E. Gilmer in favor of the plaintiffs, and denying that the said conveyances were made for the purpose of hindering, delaying and defrauding the plaintiffs.

The defendant J. W. Shepherd, Trustee, filed a separate answer admitting the execution of the trust deed to himself by the defendant J. E. Gilmer, and denying the allegations of fraud.

By leave of the Court the plaintiffs filed an amendment to the complaint, setting out two additional causes of action, as follows:

As to the deed by Gilmer to Shepherd, Trustee, the plaintiffs say:

"That the same in its terms and provisions is in conflict with the act of 1893, regulating assignments and deeds of trust in that, under the provisions of said deed, the trustee is not required absolutely to close the trust within the next

year after making the same, but by the provisions thereof it may be continued indefinitely, and is therefore void.

"*Twelfth* : That neither the defendant Gilmer, the grantor, nor Shepherd, Trustee, the grantee, have complied with the terms and provisions of said act, in that among other things defendant Gilmer, the grantor, has not filed a sworn schedule of the preferred claims under said act as therein provided, nor Shepherd, Trustee, a sworn inventory of the property which come into his hands under said deed.

"Wherefore the plaintiffs insist that said deed is void and of no effect."

Issues were submitted to the jury, without objection, and answered by them as follows :

"1. Was the trust deed dated January 18th, 1894, executed by J. E. Gilmer, with the intent to hinder, delay or defraud his creditors or any one of them ?  Answer, 'No.'

"2. Was the deed dated August 2nd, 1893, from J. E. Gilmer to his sons John L. and Powell Gilmer fraudulent and void ?  Answer, 'No.'

"3. Was the said deed a voluntary conveyance as to an undivided 92-100 interest?  Answer, 'No.'

"As to any remaining interest ?  Answer, 'Yes.'

"4. Was the lot described in said deed purchased and the factory thereon constructed by J. E. Gilmer in whole or in part with funds borrowed by him from his wife with the understanding and agreement between them that the property should belong to their sons, the said John L. and Powell Gilmer?  Answer, 'Yes.'

"5. If so what amount of money belonging to his said wife was thus used by said J. E. Gilmer ?  Answer, '$9,200.'

"6. Was the bill of sale of the stock of goods on July 1st, 1893, fraudulent and void ?  Answer, 'No.'

"7. If there was such a trust deed as is mentioned in issue 4th was it a fraudulent trust? Answer, 'No.' "

The plaintiffs introduced in evidence a deed from the defendant to his sons John L. and Powell Gilmer, conveying what was known as "The Factory Lot" in Winston. The deed was dated August 2, 1893, probated August 4, 1893, and registered January 5, 1894. The consideration was stated to be "ten dollars and the further consideration of natural love and affection which he bears to his sons John L. Gilmer and Powell Gilmer and the further consideration of the large sum of money belonging to the mother of John L. Gilmer and Powell Gilmer and used by the grantor in the purchase of the lot herein conveyed and erecting the building thereon."

The plaintiffs also introduced a deed of trust from the defendant to J. W. Shepherd, dated and probated January 18th, 1894, and registered Jan'y 22, 1894. The deed was made for the purpose of securing certain debts therein mentioned and contained a defeasance clause providing that if the grantor should fail to pay the debts secured by the deed on or before the 2d day of April, 1894, then the trustee, upon application of any of the unpaid creditors, should sell the lands conveyed at auction and apply the proceeds to the payment of the said debts and costs, etc., and pay any surplus to the grantor.

The plaintiffs also introduced records of judgments against the defendant and others aggregating about $250,000, together with executions on those belonging to the plaintiffs on which the Sheriff had returned "nothing to be found."

For the defendants, the trustee, J. W. Shepherd testified, among other things, that at request of creditors he had sold all the property conveyed in the deed in trust at public auction to the defendant John L. Gilmer for $25,000, with

which he had been enabled to settle all the debts mentioned in the deed in trust; that he personally knew of a good many of the secured debts and that they were *bona fide*; that he never had any reason to think that any of the debts were not *bona fide*, and that no fraudulent suggestion was ever heard of by him.

The other material facts developed in the testimony appear in the plaintiff's request for instructions and the charge of *Battle, J.*

The allegations of fact contained in the amendment to the complaint were admitted by the defendants on the trial, without prejudice as to any conclusions of law therein stated.

The trial of this action commenced on Wednesday, November 26th, 1894, during the week of Special Term, which Term would have ended with that week but for the judge continuing the Term under the statute, *Code*, Sec. 1228, as amended by Acts '93, Chap. 226, which the plaintiffs insisted that he had no right to do, and they duly excepted to his ruling that he did have such right. The case was given to the jury on Saturday of that week at 7 p. m., and the Court took a recess then for supper till 9 p. m., met again at that hour and the jury having come in and announced that they could not agree, the judge ordered an adjournment of the Court until Monday, Dec. 3rd, 1894, at 9 a. m., to which the plaintiffs objected as above stated. Court met on Dec. 3rd, 1894, at 9 a. m., pursuant to adjournment. The jury appeared and announced that they had not yet agreed, whereupon they were directed to retire and Court was adjourned from time to time, ( as will appear from the entries in the minute docket, which will be copied and hereto annexed) until the judgment was signed.

The verdict was rendered on Tuesday, Dec. 4th, and after that the special Term was continued from day to day

116—44

by consent of parties in order that plaintiffs counsel might prepare and present their motion for a new trial.    The regular Term of Forsyth Superior Court convened on Monday, Dec. 3rd, 1894, at 10 a. m., and continued for two weeks.

When the jury came into Court Monday morning, Dec. 3rd, at 9 a. m., and said they could not agree, the judge told them that it would be a lame and impotent conclusion of the special Term, if four days' labor during that Term was to go for nothing.    " It is important to the parties, it is important to the public that this litigation shall come to an end.    You are intelligent men, and are just as able to decide these issues as any other jury will be.

" You ought to consult and reason together and come to a verdict.    You ought not to be obstinate about the matter.    It is your duty to agree if you possibly can.    I shall be here. holding court for two weeks, and you will have plenty of time to reflect on the matter."

Late in the afternoon of the same day the jury again came into court and one of them had certain written questions which he asked the judge and he answered the same, and then said to the jury :    "You should reason together, gentlemen, and try to come to a unanimous conclusion on all the issues.    I repeat to you what I said this morning, that we have been engaged in this trial for some time, and it is to the interest of the parties and of the public that the suit should come to an end.    It is against the public interest that the dockets should be in a crowded condition.    It prevents persons whose rights are invaded from bringing suits, which they think will be so long in being tried.    I do not mean that you should render a compromise verdict which would be improper.    If one or two of you should think one way and the others another way, ( I do not know how you stand, I merely say this for an illustration) that one or those two should not be obstinate about the matter, but all

should reason together, discuss the matter fully and see if they cannot arrive at unanimity." The jury then retired, remained out all night, and the next morning returned the verdict which appears in the record.

At the close of the testimony, the plaintiffs asked the Court to hold as a matter of law:

1st. That the deed of trust executed by J. E. Gilmer to the defendant Shepherd was void upon its face as being in conflict with and inconsistent with Chapter 453 of the Acts of 1893 of the State of North Carolina, regulating deeds of assignment as is alleged in the amendment to the plaintiffs complaint and numbered No. 11, and

2nd. The plaintiffs asked the Court to hold the deeds of trust from Gilmer to Shepherd as void, for the reason that it was admitted that neither the grantor Gilmer nor the trustee Shepherd had complied with the terms and provisions of the said Act of 1893 regulating assignments and deeds of trust, in that, among other things, the defendant Gilmer, the grantor, had not filed a sworn schedule of the perferred claims under said Act as therein provided, nor the said trustee, Shepherd, a sworn inventory of the property which came into his hands under said deed. The Court reserved these questions until after the verdict of the jury, and then refused to grant the motions of the plaintiffs, to which the plaintiffs excepted.

At the close of the testimony plaintiffs submitted prayers for instructions as follows:

No. 1. That taking all the evidence as true with regard to the conveyance of factory, the deed from Gilmer to his sons is a voluntary conveyance and void as to the plaintiffs.

No. 2. That it appears by uncontradicted evidence that the sale of the goods was:

(1) When plaintiff had a subsisting debt.

(2) Was to a son of the debtor, Gilmer.

(3) Was on 6, 12, 18 and 24 months time.

(4) Son was at the time of sale of goods not worth more than $500.

(5) Immediately after sale of goods the purchaser issued billheads, stating that the purchasing firm consisted of W. H. Marler and the two sons, one of whom was at the time nineteen years of age.

(6) No security was taken by the debtor but simply the unsecured notes of the son.

(7) That at the time of sale the debtor, Gilmer, was greatly embarrassed.

(8) That this embarrassment existing in July, 1893, resulted in insolvency.

That these facts being established, the law declares the sale void as to plaintiffs unless evidence of other and additional facts indicating good faith is furnished by defendant, and such additional evidence as appears in this case is not sufficient in law to show good faith in the transaction, and the jury must find the sale of goods to be void as to the plaintiffs.

No. 3. That if the deed of trust to Shepherd was made by Defendant Gilmer with the intent to hinder, delay and defraud his creditors, or any of them, the same is void, although neither the trustee, Shepherd, nor the beneficiaries thereunder knew of or participated in such fraudulent intentions and although the debts secured thereby are bona fide.

No. 4. As to the deeds to the sons, the Court is asked to charge the jury, that the request of Mrs. Gilmer that defendant J. E. Gilmer, should buy the lot and build the factory with money owing to her and represented by notes of defendant Gilmer, and convey the same to her sons John L. and Powell Gilmer, and defendant's verbal promise to do so,

was a mere executory, oral contract, and not being carried into effect in wife's life time the same was incapable of enforcement in specie by the courts and the notes to the wife, by her death, intestate, became the property of J. E. Gilmer, and therefore it was incompetent and inadmissible in defendant J. E. Gilmer when the money represented by his notes had become his absolute property, to fall back on the incomplete purposes of himself and wife in regard to the factory, and thus execute a deed to the boys; and as to this property, to-wit, the factory, the deed of Gilmer to his sons is not founded on valuable consideration and is therefore void as to his creditors.

No. 5. If the Court refuses to instruct that upon the case made the deed from Gilmer to his sons was a voluntary conveyance and shall leave it to the jury to say whether there was a trust, which existed at the death of Mrs. Gilmer, in favor of her sons, which he could execute by conveying to them, then plaintiff requests the Court to hold and charge that upon all the evidence the trust was secret and therefore void as to plaintiffs.—Refused; but the Court told the jury that if it was a secret, fraudulent trust, the husband to hold himself out as owner, to sail under false colors, if such was the purpose of the parties to the trust, then the same is void and no trust at all, and the seventh issue should be answered "Yes."

No. 6. If the debt of $2,000 preferred in the trust deed to John and Powell, consisted of rents and sales of timber from lands belonging to Lettie with a remainder over to John and Powell, the rents and sales accruing in the lifetime of Lettie, and in the hands of J. E. Gilmer, as guardian, at her death, the money thus due to her became the property of J. E. Gilmer on her death, and did not belong to John and Powell, and hence the preference was fictitious and the insertion of a fictitious debt in this trust deed is a

fraud on the part of the grantor, and therefore vitiates the deed, and the first issue must be answered, "Yes."

No. 7.   If the debt of $2,000 prefered in the trust deed to John and Powell, consisted of rents and sales of timber from land belonging to Lettie, with a remainder over to John and Powell, the rents and sales accruing in the lifetime of Lettie, and in the hands of J. E. Gilmer, as guardian, at her death, the money thus due to her became the property of J. E. Gilmer on her death, and did not belong to John and Powell, and hence the preference was fictitious and the insertion of a fictitious debt in this trust deed is a strong badge and circumstance of fraud.

No. 8.   There is evidence that some of the debts secured by the trust deeds were debts in which the debtor, J. E. Gilmer, was liable jointly and severally with others who were solvent and responsible, and that these debts were described in the trust deed as being the debts of J. E. Gilmer, without reciting the fact of the liability of these other debtors; and there is evidence that some of said debts recited in the trust deed were secured by good and valuable collaterals, which were not recited in the trust deed.   If J. E. Gilmer had the purpose in making the trust deed to suppress these facts and thereby magnify his indebtedness and mislead his creditors, this amounts to an intent to hinder, delay and defraud his creditors, and makes the deed void and the jury must answer the first issue, "Yes."

No. 9.   If the jury should find that Gilmer inserted in the deed to Shepherd the debt of $4,000 as due to Gilmer, Marler & Co., at a time when they, as a firm, were indebted to him in a greater sum with the purpose thereby to magnify his indebtedness and mislead his creditors, this amounts to an intent to hinder, delay and defraud his creditors, and such intent vitiates the deed and you will answer yes to the first issue.

The Court declined to give instruction No. 1.

The Court refused to give instruction No. 2, as therein set out, but in lieu thereof gave instructions as hereinafter set out.

The Court gave instruction No. 3.

The Court refused instruction No. 4, but instructed the jury on that point as hereinafter appears.

In regard to the plaintiffs' 6th prayer for instructions, the Judge struck out the last part thereof, beginning with the words, "hence the preference was fictitious," and inserted in lieu thereof, "if the defendant, J. E. Giimer, knew this and fraudulently inserted this debt in the trust deed, that would vitiate the whole trust deed, and the first issue should then be answered 'Yes;' but this would not be so if the inserting of a debt that he did not really owe was due to an honest mistake."

A similar change was made by the Judge in the 7th prayer for instructions.

These prayers for instructions, thus changed, were given to the jury.

The Judge recapitulated the evidence, applied the law threto, and instructed the jury fully in these and all other law points raised. He was not requested to put his charge in writing. Among other instructions he gave the following :

"1. The defendant's counsel contend that the relation of debtor and creditor, existing between J. E. Gilmer and his wife, he owing her $9,200, there was an agreement between him and her that he would purchase a lot in Winston and build thereon a tobacco factory, the property so acquired to be held in trust for her two sons, John and Powell, he, the said J. E. Gilmer, to use in the acquiring of such property the money that he owed her as far as it would go, or his own money with the understanding that the

money thus expended should go as a credit on her notes against him, and that, in pursuance of this agreement, he, joining in with one Edmunds, purchased a lot in Winston from W. A. Whitaker and built a factory thereon, paying for the lot and building about $17,000.00 and afterwards in pursuance of the same agreement took a deed May 26th, '91, from said Edmunds for his interest in said property; and that the amount of her money used in this way was $9,200, the cost of the property then being $17,000.00.

"If the jury believe that the facts are as above stated then the two sons became as soon as the property was acquired the equitable owners of 92-170 thereof and as to such undivided interest the deed from said J. E. Gilmer to said John L. Gilmer and Powell Gilmer, dated Aug. 2nd, 1893, is not voluntary.

"2. The alleged facts on which this alleged trust depends must be proven by the defendants to the satisfaction of the jury by evidence which, in their judgment, is cogent, clear, strong and convincing. If the jury do not consider such facts so proven, then they will answer the 3rd issue : Yes. If they do not consider such facts so proven, they will answer said issue : No, as to an undivided 92-170 interest. Yes, as to the remaining interest.

"3. If the lot was purchased and the factory built without any such agreement as above mentioned, or without the existence of facts necessary to create a trust as aforesaid then the notes held by the wife against the husband, remaining unpaid at her death, (she dying intestate) became the property of the husband as her sole distributee (he becoming, that is, the real owner thereof, subject to the claims of her creditors, if any;) and the third issue must in that case be answered, Yes.

"4. In a case of circumstantial evidence, there are two

inquiries for the jury : (a) the evidential facts, that is the facts relevant to the issue.  Are they true ?  (b) Do you infer from such facts that the fact in issue exists ?  For example in regard to the sixth issue, the fact in issue, (alleged by plaintiffs and denied by the defendants) is that the goods were sold July 1st, 1893, by J. E. Gilmer to John L. Gilmer with intent to defeat, or to hinder, or to delay the creditors of J. E. Gilmer or some one or more of them ; or putting this in other words that his purpose, or some part of his purpose, in making this sale, was to promote his own ease and favor, at the expense of, or to the prejudice of the rights of his creditors."

The evidential facts on which the plaintiffs rely and which the defendants do not contradict, are the following :

(a) That the plaintiffs had at the time subsisting debts.

(b) That the said purchaser was the near relative, the son, of the seller of the goods.

(c) That the sale was not for cash, but on time, notes being taken payable in 6, 12, 18 and 24 months.

(d) That no security was taken for said notes.

(e) That the purchaser was not worth more than $500.00.

(f) That at the time of sale debtor, J. E. Gilmer, was greatly embarrassed.

(g) That immediately after sale the purchasers issued bill heads stating that the purchasing firm consisted of W. H. Marler and the two sons, one of whom was at the time nineteen years of age.

(h) That the debtor, J. E. Gilmer's financial embarrassment, existing in July, 1893, resulted in insolvency.

The question is whether, from these facts and other evidential facts which you may find to exist, you infer the existence of the fact in issue.

The defendants argue against such an inference and contend that they have proven the following evidential facts :

"1. That the said J. E. Gilmer's purpose in selling the goods was to get out of business on account of the ill health of himself and other members of his family, etc.

"2. That he had reason to believe that the notes taken for his son would be paid—his wife, who had considerable property, having frequently expressed to him her desire and purpose to set her said son up in business.

"3. That the said son was of good business qualifications, sober and industrious.

"4. That the printing of Powell Gilmer's name on the bill heads was a mistake.  He hadn't really been taken into the firm of Gilmer, Marler & Co., as a member, but it was only intended that he should become a member when he attained his majority.  The question is whether these facts are true, and then whether from the whole evidence you infer the existence or non-existence of the fact in issue, remembering that on the whole case the burden of proof is on the plaintiffs."

The plaintiffs duly excepted to the refusal of the Court to grant the first instructions prayed for—the refusal to give second instruction prayed for—and as prayed for, and to the giving of the instructions that were given in lieu thereof.

Same as above in regard to the plaintiff's 4th prayer—to the refusal to give their 5th prayer for instructions and to the instructions that were given .in that connection. And to the changes that were made by the Court in their 6th and 7th prayers.  The plaintiffs further excepted to that portion of the Judge's charge in which after recapitulating the evidential facts on which the plaintiffs relied, letter from (a) to (h) both inclusive, as to which the defendants

had introduced no contradictory evidence, and after reca-pitulating the evidential facts which the defendants claimed to exist in their favor, the Judge refused to tell the jury that there was a legal presumption of fraud, but told the jury, "The question is whether these facts are true and then from the whole evidence do you infer the existence or non-existence of the fact in issue, remembering that in the whole case the burden of proof is on the plaintiffs."

The jury responded to the issues as set out above. Plain-tiff moved for a new trial which was refused and appealed from the judgment rendered. Errors assigned were as fol-lows :

" First. That the court erred in refusing to grant the motion of the plaintiffs asking that the said deed of trust from Gilmer to Shepherd be declared void on its face as being inconsistent with the Act of 1893 regulating assign-ments and deeds of trust.

" Second. That the court erred in refusing to grant the motion of the plaintiffs asking that the deed of trust from Gilmer to Shepherd be declared void upon the admitted facts that neither the grantor, Gilmer, nor the grantee, Shepherd, had complied with the Act of 1893 in reference to assignments and deeds of trust.

" Third. That the court erred in ordering the jury to be brought into court and addressing them in the language as set out above.

" Fourth. That the court erred in continuing the special term after the regular term had been opened and receiving the verdict of the jury on Tuesday, the 4th day of Decem-ber, 1894, it being the second day of the regular term of the Forsyth Superior Court.

" Fifth. That the court erred in refusing to grant the special instructions numbered 1, 2 and 4 asked for by the

plaintiffs, and in changing their 6th and 7th prayer for instructions.

"Sixth. That the court erred in giving in place of instructions fifth asked for, the following : "But if it was a secret fraudulent trust, husband to hold himself as owner, to sail under false colors, if such was the purpose of parties to trust, same is void as to plaintiffs, and no trust at all, and the seventh issue should be answered, ' Yes.'

"Seventh. That the court erred in charging the jury as follows : ' After recapitulating the several facts on which the plaintiffs relied, and which the defendants did not contradict, and lettered respectively from "a to h" both in conclusive, and after recapitulating the evidential facts which the defendant J. E. Gilmer claims to have proven, the question is whether these facts are true, and then whether from the whole evidence you infer the existence or non-existence of the fact in issue, remembering that on the whole case the burden of the proof is on the plaintiffs.' "

*Messrs. Dillard & King, Ricaud & Weill* and *D. L. Russell,* for plaintiffs (appellants).

*Messrs. Watson & Buxton* and *Jones & Patterson* and *Glenn & Manly,* for defendants.

AVERY, J.: The exception to the Judge's remarks to the jury are without merit. Almost the same expressions were used in *Osborne* v. *Wilkes,* 108 N. C., 651, and were found unobjectionable on appeal, citing *Hannon* v. *Grizzard,* 89 N. C., 115. Nor was there error in continuing the Term to conclude the trial or to receive the verdict. This is authorized as to felonies by *The Code,* Sec. 1229 (*State* v. *Adair,* 66 N. C., 298) and was extended to all other cases by Chapter 226, Acts 1893, except that it would

not apply to civil cases begun after Thursday of the last week of the Term. The trial of this action began on Wednesday. At common law, when the jury in a capital case did not agree during the Term, they were carried to the next Court where of course the business went on during their deliberations. 2 Hale P. C., 297 ; *State* v. *Bullock*, 63 N. C., 570. Certainly it could in no wise prejudice the parties that while the jury were out considering their ver- dict, the Judge opened and conducted another Term at the same place. It could in no wise have benefitted the parties to have had the Judge idle, nor could it be expected that the public business should thus, without cause, have been suspended. The Court erred in holding that the evidence offered to establish a trust in favor of the son's was suffi- cient to be submitted to the jury. The relation of debtor and creditor had existed between J. E. Gilmer and wife many years prior to the purchase by him of the land in 1890 for the firm of which he was the senior member. He bought the land with the firm's money and constructed the building thereon also with funds of the firm. He subse- quently, in 1891, bought his partner out and took title to himself without any directions or instructions from his wife, who was not consulted. In 1892 he executed more notes to his wife and entered credits on those then existing. At the death of his wife these notes became the property of J. E. Gilmer. *Code*, Sec. 1479. If there was any agreement between him and his wife that he, being indebted to her, was to buy a lot and build a factory, charging the cost on her notes, the property to be held in trust for his sons, it is the evidence of himself and partner that in fact the lot was bought and the factory built with the funds of the firm. The verbal agreement with his wife was executory, and the notes becoming the property of J. E. Gilmer by his wife's death, the deed thereafter to his sons was without consider-

ation, and void as to creditors. The fourth prayer of instructions asked by the plaintiff should therefore have been given, and the instruction given in lieu thereof was erroneous, being based upon a hypothetical state of facts not appearing in the evidence.

But if the testimony offered for the plaintiffs was believed by the jury, there were a number of badges of fraud which can scarcely be accurately described except by so denominating them, though they are sometimes designated as circumstances calculated to excite suspicion and challenge scrutiny in order to ascertain whether a conveyance was executed with fraudulent intent. Among the evidences of fraud relied upon by the plaintiffs were the following: 1. That Gilmer owed a debt when he sold the goods; 2. That he sold on a credit of 6, 12, 18 and 24 months; 3. That the purchaser was not worth over $500; 4. The purchaser gave his note without security; 5. Gilmer was embarrassed with debt; 6. Though not then insolvent, his embarrassment soon after resulted in insolvency; 7. The sale was to a son.

In *Beasly* v. *Bray*, 98 N. C., 266, the Court held that an absolute conveyance by an insolvent debtor to an insolvent vendee, who was not fixed with a fraudulent intent, even upon a *long credit* and without security, was merely evidence of fraud to be considered by the jury. It will be observed that in Beasley's case it was admitted that the debtor was not only embarrassed with debt but was actually insolvent. If in this case it had been admitted that the elder Gilmer was insolvent and conveyed to a son for an insufficient consideration, such a combination of circumstances would have raised a presumption of fraud. "But father and son may deal with each other in good faith just as others not so related may do." *Banking Co.* v. *Whitaker*, 110 N. C., 345.

If the conveyance to the son by an embarrassed father had been made, when only mere relatives were present, and explanation had been withheld, these circumstances would have raised a presumption which could be rebutted in no other way than by a full disclosure. *Helms* v. *Green*, 105 N. C., 251. But in *Bank* v. *Bridgers*, 114 N. C., 383, the Court said: " The existence of near relationship between the parties to a suspicious transaction often constitutes additional evidence of fraud for the jury," but that it was error to instruct the jury that the existence of such relationship was *prima facie* evidence of fraud.

Had the conveyance been made by an insolvent husband to his wife, the burden would have rested upon those who claimed under it to rebut the presumption of fraud raised by those circumstances. *Peeler* v. *Peeler*, 109 N. C., 628 ; *Browne* v. *Mitchell*, 102 N. C., 347.

This Court has recently held that mere inadequacy of price, however gross and whether considered alone or in connection with other suspicious badges, was only a circumstance tending to prove fraud. *Berry* v. *Hall*, 105 N. C., 154; *Orrender* v. *Chaffin*, 109 N. C., 422. In *Berry* v. *Hall*, *supra*, following *Ferrall* v. *Broadway*, 95 N. C., 551, the Court held that a trial Judge "was not at liberty to say to the jury that any fact proved or admitted, that does not in law raise a presumption of the truth of the allegation of fraud, is a strong circumstance tending to establish it." In the same opinion, referring to the reasons assigned by the Judges when acting as chancellors and passing upon the facts, the Court said: " The reasons assigned in these opinions for giving more or less weight to any testimony were not intended to be, and cannot, without invading the province of the jury by violating *The Code*, Section 413, be adopted as rules to be laid down in the charge of the Court for their guidance."

In *Stoneberger* v. *Jeffries*, decided at this term (115 N. C., 78 ) the Court has held that " the burden of proof is sometimes shifted in the progress of the trial, but it is only by the introduction of testimony which the law has declared to be *prima facie* proof of fraud, but which may be rebutted by evidence deemed by the jury sufficient to explain such suspicious circumstances, and thereby overcome the artificial weight which the law has attached to them, as evidence.    *McLeod* v. *Bullard*, 84 N. C., 515 ; *Lee* v. *Pearce*, 68 N. C., 77." It thus appears that in recent cases every single circumstance admitted in this case has been declared only a badge of fraud of itself, or where it has been associated with others of the number, the same conclusion has been reached.    The application of the abstract proposition (in *Brown* v. *Mitchell*), which it is proposed to so apply as to make every new issue of fraud that may arise a law unto itself, was made with reference to the rule that where the husband transfers property to his wife in payment of an alleged debt, the rule is different from the case of father and son, and that circumstance, in combination with his insolvency, shifts the burden upon the wife to show a *bona fide* indebtedness from the husband.

But I can imagine nothing that could introduce greater uncertainty into the law than the proposition that some indefinite combinations of the hundreds of circumstances which are deemed sufficient to throw suspicion upon a business transaction, will hereafter be held to raise a presumption of fraud.    In the case at bar, we have eight suspicious circumstances grouped together, and it is proposed to declare them sufficient, as a rule of evidence, to amount to *prima facie* proof of fraud.    Suppose we take these eight badges of fraud and a dozen additional ones, making twenty in all, that have never been heretofore held to be more than suspicious circumstances challenging

scrutiny by the jury, and see how many hundred of differ-ent combinations may be made and presented to this Court, and we will be able to form some faint conception of the sea of uncertainty upon which we would embark, were we to make such a vague application of the abstract proposition referred to.

Upon the testimony tending to prove all these suspicious circumstances, however, the duty devolved upon the Court, in view of the requests made by counsel, to speak of them, not as evidential facts bearing upon the issue, but as badges of fraud to be considered by the jury in passing upon the issue involving the fraud.    The prayers in which the plain-tiffs asked the Court to tell the jury that certain evidence, if believed, raised a presumption of a fraudulent intent in the execution of the deed were properly refused by the Court, but they demanded, in lieu of what was asked, some more specific instruction to the jury in order to enable them to comprehend the bearing of the circumstances proved, upon their findings.    Parties who seek to set aside deeds are required not only to allege the existence of facts which constitute fraud, but to prove what they allege.    Where a plaintiff charges the fraud according to the prescribed prac-tice, and an issue, involving it, is framed and submitted, he has a right to insist that circumstances, which his testimony tends to prove and which the law denominates badges of fraud, shall be so called, and that scrutiny upon the part of the jury shall be invited by bestowing upon them their proper designation.    Whenever a charge is excepted to, and it appears to the Court that it was calculated to mislead instead of enlightening the jury, a new trial should be granted.    It would have necessitated the presence of a jury of lawyers in the box in order to comprehend fully what was the fact in issue, and the evidential facts tending to support the affirmative or the negative view of the propo-

116—45

sition, because the language was technical. Such philo-
sophical discussions are addressed, in opinions of Courts, to
the bar, but instructions to juries are intended, in contem-
plation of law, to enable men of fair intelligence but with-
out any technical learning to apply the law to the evidence.
The portion of the instruction which we think amenable to
the charge that it was not responsive to the requests and
was calculated to mislead the jury, is as follows : "In a
case of circumstantial evidence there are two inquiries for
the jury, First, the evidential facts, that is, the facts rele-
vant to the issue—are they true? Second, do you infer
from such facts that the fact in issue exists? For example,
in regard to the 6th issue, the fact in issue (alleged by
plaintiffs and denied by defendants) is, that the goods were
sold on July 1, 1893, by J. E. Gilmer to John L. Gilmer,
with intent to defeat or to hinder, or to delay the creditors
of J. E. Gilmer or some one or more of them ; or, putting
this in other words, that his purpose or some part of his
purpose in making this sale was to promote his own ease
and favor, at the expense of, or to the prejudice of the
rights of his creditors. The evidential facts on which the
plaintiffs rely and which the defendants do not contradict,
are the following." Then follows the Judge's enumeration
of the circumstances already mentioned, which counsel had
insisted either established or raised a presumption of the
fraud, but which the Court nowhere calls by the compre-
hensible designation of badges of fraud, or circumstances
tending to show fraud, or that call for scrutiny in the con-
sideration of their findings in response to the particular
issue. When the plaintiffs took the burden, which the law
imposes, of proving the fraud alleged, the Court, having
refused the instruction that the testimony in any aspect
raised a presumption of fraud, should have told the jury, in
language calculated to be understood by laymen, the nature

and the bearing of the evidence relied upon by the plaintiffs to establish the affirmative of the issue.

It was error in lieu thereof to recite these admitted facts and the explanatory evidence offered by the defendants and merely instruct the jury "The question is whether these facts are true and then whether from the whole evidence you infer the existence or non-existence of the fact in issue, remembering that on the whole case the burden of proof is on the plaintiffs." Nowhere in the charge is there an instruction that any of the facts proven or admitted was a badge of fraud and that evidence explanatory of such badge "must be scrutinized with care."

The Act of 1893, Ch. 453, does not prohibit *bona fide* mortgages to secure one or more pre-existing debts but when as here, a mortgage is made of the entirety of a large estate for a pre-existing debt, omitting only an insignificant remnant of property, such mortgage is in effect an assignment for the benefit of the creditors secured therein. To hold otherwise would be in effect to nullify the act. The Court erred therefore, after the grantor's admission of the above fact, in refusing to grant the plaintiff's motion to declare the deed of trust void as inconsistent with the Act of 1893 regulating assignments and deeds of trust, and void on the admitted fact that the grantor had not complied with the said act.

Chapter 453, Acts 1893, is not a mere recommendation from the Legislature to insolvents as to the form of assignments and proceedings thereunder, but in its very nature the Act is imperative. If not complied with by the assignor by filing schedule as required, the assignment is invalid. The fact that the failure to observe any of its provisions makes the assignee indictable, of itself indicates that the requirements of the act are mandatory. The assignor is not indictable. The assignment is simply invalid

if he did not follow the act. No authority is necessary for this proposition, but there are precedents to support it. *Julian* v. *Rathborne,* 39 N. Y., 369 (where the statute is almost identical with ours ;) *Jaffrey* v. *McGehee,* 107 U. S., 361 ; *French* v. *Edwards,* 18 Wall., 506 ; Southerland Stat. Const., Sec. 459 ; *Harkrady* v. *Leiby,* 4 Ohio St. Rep., 602 ; *Fetcheimer* v. *Baum,* 43 Fed. Rep., 719. For these errors there must be a new trial. New Trial.