HENRY W. WOLF & CO., et al. v. J. W. L. ARTHUR, et al.

*Fraudulent Conveyance—Corrupt Intent of Seller—Knowledge of Purchaser of Seller's Fraudulent Intent—Badges of Fraud.*

1. A sale or mortgage of property for a valuable consideration will be upheld as valid, though intended by the grantor to defraud his creditors, provided it is not shown that the purchaser or mortgagee participated in or had notice of the fraudulent purpose, or of such facts as would put a prudent man upon enquiry that would lead to a discovery of the covinous purpose.

2. Fraud in law does not always necessarily involve a corrupt or dishonorable intent on the part of the person to whom it is imputed; and knowledge of the seller's fraudulent purpose may vitiate a sale, though the intent of the purchaser was to secure an honest debt due to himself.

3. Where, in the trial of an action to set aside a transfer of property as fraudulent, the testimony tended to excite suspicion and to show certain badges of fraud, challenging enquiry, though not raising an actual presumption of the fraudulent intent, it was proper for the trial judge to mention the circumstances and to instruct the jury that they might consider such circumstances, in connection with all other circumstances, as bearing upon the question of intent.

CIVIL ACTION, in nature of a creditor's bill, brought by the plaintiff and other creditors of J. W. L. Arthur against him and other defendants, to set aside a sale and transfer of property as fraudulent, and tried before *Graham, J.,* and a jury, at Spring Term, 1895, of MADISON Superior Court, whence it had been removed from Swain County. The issues are set out in the opinion of Associate Justice AVERY.

The various sums sued for were admitted to be due by defendant Arthur; it was also admitted that at the time complained of defendant Arthur was indebted to each of his co-defendants; one in the sum of $700, and the other in the sum of $300. It was admitted that on or about the 28th day of June, 1892, personal property, of the value of forty-seven hundred dollars, was delivered by Arthur to his co-defendants, Collins and Allison, who sold the same and converted it to their own use, and for the difference between the amounts due them by said Arthur price of said property, they executed to said Arthur their due bills, payable in merchandise It was admitted that defendant Arthur was insolvent at the time of said transfer or sale, and that all his property, except that sold to his co-defendants, was mortgaged to its full value; it was further admitted that defendant Arthur was a member of the firm of Arthur, Coffin & Co., against whom J. H. Smith had a docketed judgment for the sum of $2,445, interest and costs, and that execution on the same was in the

hands of the sheriff at the time of said sale or transfer. The plaintiff tendered issues, but the defendant tendered none. Defendant insisted that the second issue should read : " Did defendants Collins and Allison, or either of them, have notice of such fraudulent intent on the part of ·defendant Arthur and participate in the same ? "

Pending the removal of the action, and before a transcript of the record had been sent to Haywood county, the plaintiffs examined the defendants before the clerk of the superior court of Swain county, under Section 580, 581, *et seq.*, of *The Code*. On the trial the evidence as to conversation between Arthur and Thompson, and between Arthur and Welch, and between Arthur and Newby, in the absence of the other defendants, was objected to by defendant. The court admitted it only against Arthur, and defendants excepted. The same objection was made to conversation between Arthur and Collins, and between Arthur and Allison, and between Collins and Allison, and between Newby and Collins and Newby and Allison, and Welch and Allison and Collins, and the letter of Collins to Lockett & Co. The court overruled the objection, but told the jury they were competent only against the defendant making the declarations or in whose presence they were made. The defendants excepted.

The following is a part of a letter of the defendant Collins, written to one of the plaintiffs, and offered to show the participation by him in the fraudulent purpose of defendant Arthur.

" Mr. Allison and I bought Mr. Arthur out last July to secure what he was owing us, and to prevent him from being closed out by an unjust matter that was coming against him, and in the trade I got some tree nails and Insulator pins that was on the yard near Mr. Arthur's mill. Messrs. Fry & Newby ran an execution

on these and I replevied them as my property, so they at once instituted suit against me in your name to recover the amount of your debt.   This is the whole matter, as I stated to you.   At the time I made the trade with Arthur, I did not know he was owing you a cent nor did  I  know whose account they were trying to collect when they seized my nails and pins.   Messrs. Fry & Newby say that you have misunderstood them and that  they  will  write  you again.   I shall be pleased to assist you in any way that I can to collect your account, or I will aid them in any  reasonable way.   There is no firm in your city that I  would assist or render a favor sooner than to you, but I must be frank enough to say that I do  not intend  Messrs. Fry & Newby to collect your account the  way  they  are  trying now (out of me) as long as I can  help  it, but  if  they  will jump some other fellow, then I am  with you and one of the boys.  ,Hoping they shall be able to make the  matter plain to you, that you will not misunderstand my position in the matter, I am yours truly,

(Signed)     " D.  K.  Collins."

Z. V. Welch, witness for plaintiff, testified that in 1892 he was sheriff of Swain county that an  execution  in  the case of *J. H. Smith* v. *Arthur, Coffin & Co.*, was  placed in his hands for collection ; that he saw defendant Arthur, who asked him on what property he was going to levy the execution, and he told him upon any property of any one of the defendants in  the  execution  he  could  find in . the county ; the defendant Arthur  remonstrated with him and said he thought it ought to be levied first upon  the  land that had been described in the suit.  Witness told him any property belonging to defendants was liable.   It was then about 3 o'clock in the afternoon, and  witness  went to his home in the country.   Upon his return next morning he

went to the store of Arthur, Coffin & Co., and found all the goods had been removed and were then claimed by the defendants Allison and Collins; that the defendant Collins or Allison had had a conversation with him about the Smith execution against Arthur, Coffin & Co., and wanted to know if it could not be stayed.

N. B. Thompson, witness for plaintiff testified that he was register of deeds of Swain county and that all property of Arthur, not included in the case to Collins and Allison, was under mortgage.

J. R. Snow, witness for plaintiffs, testified that he was clerk of the superior court of Swain county and that the various judgments mentioned in the complaint and amendment thereto were docketed on the judgment docket in his office.

N. Newby, witness for plaintiff, testified that he was an attorney, and that he held various claims against Arthur, Coffin & Co.; that he had talked with defendant and Collins about the claims; that defendants were aware of the execution in case of *J. H. Smith* v. *Arthur, Coffin & Co.;* That he was informed that the goods were being removed from the store of Arthur, Coffin & Co. after 10 o'clock at night, that he went to said store about 11 o'clock the same night and found defendants Allison and Collins and their employees removing said goods, and notified them again of his claims against said goods, but they declined to stop and removed all the goods during the night and before the return of the sheriff from the country.

The defendants offered no testimony. The court then charged the jury, among other things, " That the intent mentioned in the statute against fraudulent conveyances, refers to a legal and not a moral intent, and the fraud there spoken of does not always necessarily impute a

corrupt or dishonorable motive, but it was the doing of such things as the law would not allow done, that would injure the rights or interest of others."

Defendants excepted.

" The plaintiffs rely upon the financial embarrassment of Arthur, the return of many executions against him, unsatisfied ; the sale of the goods to Collins and Allison as soon as the sheriff went to his home in the country, after the conversation between him and Arthur in regard to the Smith execution ; his going to Collins to make a stay bond, the sale of the entire stock of goods to Collins and Allison and their removal at night out of the ordinary course of business, the disproportion between the amount of the debts to Collins and Allison and the value of the goods delivered to them ; the fact that the excess of goods was to be paid for in due bills of said Collins and Allison to be paid in merchandise, the secrecy and haste with which the transfer was made after the sheriff left town, as evidences of fraud, on part of the defendants. I charge you that they are not of themselves evidences of fraud, but badges of fraud, circumstances from which you may arrive at the intent of the parties, provided you believe them to be true—and it rests with you to decide whether or not the facts and circumstances upon which the plaintiffs rely have been established and what inferences you draw from them."

Defendants excepted.

" If you believe, from the testimony, that the defendant, Arthur, sold, transferred or assigned the property described to Collins & Allison, with intent to hinder, delay or defraud Smith in the collection of his judgment, I charge you to answer the first issue ' Yes.' "

Defendants excepted.

" In arriving at his intent you may take into consider-

ation all the circumstances in the case—his embarrassment, his declarations to Thompson, Welch, Newby, Collins or Allison, and his conduct in selling all the property he owned, not covered by mortgage, as soon as the sheriff got out of town and the haste and secrecy of its delivery, and the fact that the excess over his indebtedness to Collins and Allison was to be paid in merchandise, if you believe them to be true."

Arthur had the right to prefer one or more creditors to the exclusion of others, and if it was only the natural effect and not the purpose to defeat Smith's execution, or some other creditor, the sale or transfer would be valid; and you should answer the first issue "No." But if you believe from the testimony that Sheriff Welch had an execution against him in favor of Smith, and that after the sheriff went to his home in the country Arthur sold his entire property to Collins and Allison, as testified to, before the return of the sheriff with the intent of preventing Smith from ever collecting his judgment out of him, then you should answer the first issue "Yes."

And if the other defendants, Collins and Allison, had notice at the time of the transfer of such intent on the part of Arthur you should answer the second issue "Yes," also.

Defendants excepted.

"If you believe that Collins and Allison bought the property from Arthur for the purpose and intent of giving him ease and favor for the purpose of enabling Arthur to continue in the use and enjoyment of the property, or if the purpose was to aid the defendant Arthur in keeping Smith from collecting his judgment out of the property of Arthur, and this was also the intent of Arthur, then the sale would be fraudulent and void as to the creditors of Arthur."

Defendants excepted.

" Even if you answer the first issue ' Yes,' you should answer the second issue ' No,' unless you find from the testimony that defendants Collins and Allison had notice of the fraudulent intent of Arthur. And I charge you upon this issue that, if the defendants Collins and Allison had actual notice of such fraudulent intent you should answer the second issue ' Yes,' provided you answer the first issue ' Yes.' Or, if you believe that Collins and Allison had knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries whereby the fraud would be discovered, they will be deemed to have notice and you should answer the second issue ' Yes.' "

Defendants excepted.

" Upon this second, issue the plaintiffs rely upon the circumstances testified to in the written examination of the defendants, the letter of Collins to W. B. Lockett & Co., the conversation between Collins and Arthur, between Collins and Allison and between Allison and Arthur ; and it is for you to say from the evidence whether or not Collins or Allison, or either of them, had notice of the fraudulent intent of Arthur, provided you find he had such fraudulent intent."

Defendants excepted.

" The court arrayed the evidence on both sides, though he told the jury the defendants had introduced no testimony, but relied upon the failure of plaintiffs to make out their case ; that the defendants had the right, and it was a matter entirely within their discretion, as to the manner in which they should conduct their case." If you find the first issue ' No,' you need go no further. The burden of proof on both issues is upon the plaintiffs, for it is an axiom of the law that he who alleges fraud must prove it.

118—57

WOLF v. ARTHUR.

The plaintiff must satisfy you of the truth of his allega-
tions by the preponderance of evidence. If he has not
done so, if he has left your minds in doubt, you must
answer both issues ' No.'

The jury answered both issues in favor of plaintiffs.

Rule for new trial. Rule discharged. Judgment upon
the verdict, appeal.

*Mr. A. M. Fry*, for plaintiffs.
*Mr. J. M. Moody*, for defendants (appellants).

AVERY, J. : The issue submitted and the responses
thereto by the jury were as follows :

" 1. Did the defendant Arthur transfer, sell or dispose
of his property described in the complaint with intent to
hinder, delay or defraud his creditors or any one of them ?
Answer, ' Yes.'

" 2. Did defendants, Collins and Allison, or either of them
have notice of such fraudulent intent on the part of defend-
ant Arthur ? Answer, ' Yes.' "

The court instructed the jury that if they believed from
the testimony that the defendant Arthur sold, transferred,
or assigned the property described to defendants Collins and
Allison with intent to hinder, delay or defraud Smith in
the collection of his judgment, they should respond to the
first issue in the affirmative. Counsel for defendant rested
his argument mainly upon the contention that the finding
upon the first issue should, like that in answer to the
second, have been made to depend upon the intent of
Collins & Allison as well as that of Arthur. In a subse-
quent portion of the charge, the judge told the jury in
substance that, even though their answer to the first issue
should be " Yes," the burden would still rest on the
plaintiff to satisfy them that the defendants, Collins and
Allison, had actual notice of the fraud or notice of such

WOLF *v.* ARTHUR.

facts as would induce any prudent man to institute and prosecute inquiries that would have led to the discovery by them of the covinous purpose of Arthur.

It is settled law in North Carolina that a sale or mortgage, for a valuable consideration, may be upheld as valid, though the seller or mortgagor intended by the transaction to delay or defraud his creditors, where it is not shown that the purchaser or mortgagee participated in the fraudulent purpose. *Battle* v. *Mayo*, 102 N. C., at p. 440; *Beasley* v. *Bray*, 98 N. C., 266.

It was not error to tell the jury that fraud in law does not always necessarily involve a corrupt or dishonorable intent on the part of the person to whom it is imputed. The knowledge on the part of a purchaser of the seller's purpose to perpetrate a fraud on his creditors is thus held to vitiate a sale, though the intent of the former was to secure an honest debt due him. While appellant's counsel did not abandon other exceptions, they were not insisted upon. A careful review and consideration of the exceptions discloses no merit in any of them. There is no error in the specific mention by the judge in his charge of suspicious circumstances, and the instruction that the jury might consider them in connection with all other circumstances as bearing upon the question of intent. The testimony referred to tended to excite suspicion and to show certain badges of fraud which challenged inquiry without raising an actual presumption of a fraudulent purpose. *Bank* v. *Gilmer*, 116 N. C., 684. There was no error and the judgment is affirmed.

Affirmed.