Battle, L.
 

 The counsel for the prisoner have, in their bill of exceptions, assigned two errors as having been committed on the trial by the presiding Judge; the first, in the
 
 *116
 
 admission of improper testimony; and the second, in an improper instruction to the jury.
 

 The testimony to which objection was made, was, that soon after the oifense was alleged to have been committed, the prisoner had fled, and could not be found by the officer, who went with process for the purpose of apprehending him. The counsel admit that, had the prisoner been a free man, the testimony would have been proper, according to a well established rule of evidence in the criminal law on that subject. See Roscoe’s Crim. Ev. page 17, of 5 Am. from 3 Lon. Ed. The reason for the rule, as they contend, is, that a free man has full control of his own actions, and upon being charged, or upon the apprehension of being charged, with a crime, may go or stay as he pleases, while a slave is bound absolutely by the will of his master, and must go or stay, not as he himself may choose, but as his master may order. Hence, the counsel conclude, that as the slave may be sent or carried off by his owner against his will, the prosecutor ought not to be allowed to prove that he could not be found, as evidence of his flight, unless it be first shown that his absence was caused by his own voluntary act. In support of this conclusion, it is further urged, that the law presumes the slave is engaged in the performance of his duty to his master, and that if he be absent, it is because his master has sent him off either on business, or to avoid the danger of losing him, should he be taken and tried. The argument is an ingenious one, and was made very plausible by the manner in which it was stated and illustrated by the counsel; but it cannot stand the test of critical examination. Its fallacy consists in assuming, as a presumption, that the master will commit a great crime to avoid the risk of losing his slave. The presumption of guilt arising from flight at the time, or soon after an offense has been committed, is not at all conclusive against the person charged, and may be weakened, or entirely rebutted by other circumstances and this may just as well apply to slaves as to free persons. If it be proved that the slave did not fly of his pwn accord, .but was carried or sent off by his master, then
 
 *117
 
 tlié presumption against him, arising from his absence, will be entirely repelled. In the present case, the testimony was offered to prove,
 
 “
 
 that immediately after the offense, and the charge against the prisoner, he fled,” and could not be found for a week or two by an officer with process. From this, we cannot understand otherwise, than that the proof was offered to show that he fled voluntarily, and not that he was sent off and kept out of the way by his master. Such testimony was as well calculated, we think, to raise a presumption of guilt against a slave, as it would have been against a free man. Before the exception, as contended for, in favor of a slave ean be admitted, it must be proved by him that his flight was not his voluntary act, but was coerced by his master.
 

 The exception to the charge of his Honor is equally untenable. It is founded upon a misapprehension of the instruction which was given to the jury. The credibility of the witnesses, Lucy and Sam, who were introduced for the prisoner to prove an alibi, was impeached. One ground of impeachment was, their relation to the prisoner as his fellow servants, and his Honor intended to illustrate how that might operate against the effect of their testimony, by comparing it to the ease of persons nearly related to eaeh other by blood. When a mother is called as a witness to testify in favor of a son on a capital trial, it has been decided in the case of the
 
 State
 
 v.
 
 Ellington,
 
 7 Ire. Rep. 67, and
 
 State
 
 v. Nash, 8 Ire. Rep. 35, that such a near relationship did affect the credit of the witness. In like manner the relationship of being fellow servants, his Honor thought, and we think, affected the, credit of the witnesses, and whether that was communicated to the jury, in one form of expression ór another, it did. not violate the law, when they were told at the same time, that 'they were to he judges of the extent to which the credit of the witnesses was impaired by such relationship. ' >
 

 The latter part of the charge was based upon what was stated as a fact, and which must have been apparent both to the Court and j ury, that the witnesses, while under examination^
 
 *118
 
 showed much feeling. Such a fact, transpiring in the presence of the Court and jury, his Honor had a right to notice and comment upon, and we think his remarks very pertinent and proper, and that the prisoner has no just cause to complain of them. The motion for a new trial must be overruled; and as we find no error in the record, it must be so certified to the Superior Court of law, for the county of Northampton, to the end, that sentence may be pronounced upon the prisoner.
 

 PeR Curiam, Judgment affirmed.