W. B. FERRALL *et al.* v. E. S. BROADWAY.

*Marriage—New Trial—Equity Practice—Judge's Charge—Evidence—Province of the Jury.*

1. Where, under the former practice, a Court of Equity sent an issue to be tried by a Court of Law, it never granted a new trial, but this might be had in a proper case, by an application to the latter Court.

2. The effect to be given to testimony is exclusively for the jury, and it is error for the trial Judge, in his charge, to instruct them that in finding a fact, they must be guided by the rules which Chancellors have laid down for their guidance, where they were required to pass on the facts.

3. So, while a Chancellor would require very strong evidence to rebut the fact of marriage where the parties have lived together as man and wife, and have generally been so reputed to be, after the death of one of them, it is error for the Judge to charge the jury that they must be governed by this rule.

4. Where a man and woman have lived together in adultery, the burden of proof is on those who allege a subsequent marriage to prove it, and the fact that there was a general reputation in the community that they were afterwards married, and the declarations of the man that such was the case, does not require strong and convincing evidence to rebut it, but it must be left to the jury to decide the fact of marriage upon a preponderance of evidence.

5. In cases where the character of the evidence is suspicious, the trial Judge may call the fact to the attention of the jury, as in the case of accomplices, or near relatives of the accused, or of fellow-servants, or of a witness who has sworn falsely in a part of his testimony, but these matters of discredit are for the jury to consider, and the Judge can only caution the jury, so as to induce them to make a careful scrutiny of such evidence.

(*Peebles* v. *Peebles*, 63 N. C., 656; *Rogers* v. *Goodwin*, 64 N. C., 278; *State* v. *Haney*, 2 Dev. & Bat., 390; *State* v. *Hardin*, Ibid, 407; *State* v. *Jim*, 1 Dev. 508; *State* v. *Williams*, 2 Jones, 257; *State* v. *Nash*, 8 Ired., 35; *State* v. *Nat*, 8 Jones, 114; *State* v. *Smith*, 8 Jones, 132. *State* v. *Noblett*, 2 Jones, 418; *Wiseman* v. *Cornish*, 8 Jones, 218; *Flynt* v. *Bodenhamer*, 80 N. C., 205; approved. *Jackson* v. *Rhem*, 6 Jones Eq., 143; distinguished.)

SPECIAL PROCEEDING for partition, heard on issues joined before the Clerk, before *Clark, Judge,* and a jury, at August Term, 1886, of the Superior Court of LENOIR County.

The defendant appealed.

The facts appear in the opinion.

*Mr. Geo. V. Strong,* for the plaintiffs.

*Mr. Geo. Roundtree,* (*Mr. A. J. Loftin* was with him on the brief), for the defendant.

SMITH, C. J. In this proceeding for partition, the petitioners allege that by the death and intestacy of Jesse W. Broadway, the lands described in the petition descended to them and the defendant, his children and heirs at law, as tenants in common. The defendant in her answer, claiming to be sole heir at law of the intestate by his deceased wife, alleges that the petitioners, other than W. B. Ferrall, are the illegitimate offspring of an illicit intercourse kept up after her mother's death between the intestate and one Elizabeth Oxley, during which they were born, and as such are not entitled to any part of his estate.

· The sole issue submitted to the jury was:

Are the plaintiffs, or any of them, co-heirs with the defendant of the late Jesse W. Broadway; if so, which of them? And to this, the response is: " Yes, as to Meade, Alice and Willie."

Upon this finding, remitted to the Clerk before whom the proceedings originated, for his further action, and the denial of a motion for a new trial, the defendant appeals, assigning errors alleged to have been committed during the trial before the jury.

The sole inquiry upon which evidence was offered, was whether any marriage had ever taken place between the parents of the petitioners, and if so, at what time, and the verdict fixes it at a time antecedent to the birth of the

youngest children, so that while they are legitimate, the others are found to be bastards. The testimony fully establishes the illicit origin of the sexual intercourse, maintained during many years between the parties, and the illegitimate birth of three children, after which, if at all, the relation was rendered lawful by their intermarriage. Such is the finding of the jury. There was no direct evidence of an actual marriage, no witness being produced who was present when the ceremony was performed, and no evidence found of the issue of a marriage license authorizing it. The nearest approximation to such proof, is the intestate's declaration one Sunday evening, that he was going off to be married, and his going off and returning with the said Elizabeth, but he did not then say he had been married, and there was evidence of his having been seen going in a different direction from that leading to the county to which he had said he was going.

The evidence consisted in declarations of the intestate, wholly irreconcilable, as to his marriage—his recognition of the paternity of the children—the internal domestic management of affairs, as if the parties were husband and wife, and general reputation, was in conflict. There was produced an entry in the family Bible, written by the intestate, of the births of the three younger children, each of whom is described as the child "of J. W. Broadway and Elizabeth his wife," and the date of their respective births given.

The witnesses to the general reputation and to the declaration of the intestate, were numerous, and their testimony entirely different, except as to the earlier period of the intercourse, when there is a general concurrence as to its unlawfulness.

We do not find it needful to reproduce in detail the evidence, as this general statement of its kind and character will suffice to render intelligible the instructions, the examination and disposal of which will dispose of the appeal.

The plaintiff asked several instructions as follows:

" 1. When a man and woman have lived together for many years, treating each other as man and wife, and have been so reputed to be in the neighborhood where they lived, during all the time in which they thus cohabited; and when they have had children, which were treated by the parents as legitimate up to the time of the death of the latter, the testimony which should induce a Court to declare against the marriage of the parties, and thereby to bastardize their issue after their deaths, ought to be so overwhelming as to leave not a doubt about the facts thus declared. Given—subject to the second instruction given for defendant.

·" 2. When a man and woman have lived together for many years, treating each other as man and wife, and have been so reputed to be in the neighborhood where they lived, up to the time of their deaths, and when they have had children which were treated by the parents as legitimate, up to the time of the death of the latter, the testimony which should induce a court to declare against the marriage of the parties, and thereby to bastardize their issue after their deaths, ought to be so overwhelming as to leave not a doubt about the facts thus declared. Given—subject to second instruction given for defendant.

"3. Where a man and woman lived together for many years, treating each other as man and wife; and where they have had children which were treated by their parents as legitimate, up to the time of the death of the latter, the testimony which should induce a Court to declare against the marriage of the parties, and thereby to bastardize their issue after their deaths, ought to be so overwhelmidg as to leave not a doubt about the facts thus declared. Given—subject to second instruction given for defendant.

" 4. The principle that the validity of a marriage ought not to be questioned after the parties, or either of them, have by death been deprived of the opportunity of supporting it

by proof, may well influence the jury in deciding upon the existence of the marriage after the death of both, or either of the parents. Given after being modified as follows: 'But the fact of marriage or no marriage is entirely a question for the jury to ascertain upon all the evidence in the case.'

"5. The cohabitation of a man and woman as man and wife, is presumed to be lawful until the contrary appears, and the burden of proving such cohabitation unlawful, is upon him who asserts it, in this case, the defendant. Given, subject to second instruction given for defendant.

"6. A marriage is valid, if solemnized by one having authority to do so, although no license was obtained, no bond given and no certificate returned by the person solemnizing the marriage." Given.

The several instructions given at the request of the defendant, incorporated in those numbered 1, 2, 3 and 4, as a qualifying condition of each, is this:

"2. That if the jury should believe that the intercourse between J. W. Broadway and Elizabeth Oxley began meretriciously, or that it was even illicit, then there is no presumption of marriage from reputation, but the inference is that the unlawful commerce continued to exist, and plaintiffs must show a change in their intercourse, or the jury must find against a marriage." Given.

This charge is supposed to be sanctioned by the words used by BATTLE, Judge, delivering the opinion in *Jackson* v. *Rhem*, 6 Jones Eq., 141, who says: "We are of opinion, that when a man and woman have lived together for many years, treating each other as man and wife, and have been so reported to be in the neighborhood where they lived, during all the time in which they thus cohabited, and when they have had children, which were treated by the parents as legitimate up to the time of the death of the latter, we think that the testimony which should induce a Court to declare against the marriage of the parties, and thereby

bastardize their issue after their death, *ought to be so over-whelming as not to leave a doubt about the facts thus declared.*"

In this case, issues had been sent to a Court of law, to obtain the responses of a jury to an inquiry as to the marriage of the parents of certain of the plaintiffs and their birth in wedlock, to which an affirmative response was returned, and the language quoted was in answer to a motion made in the Supreme Court, exercising its functions as a court of equity, for the dismissal of the bill notwithstanding the verdict, or to order another trial of the issue, on the ground that the verdict was against the weight of evidence.

The case states, that testimony in the form of depositions to be used on the hearing, and on the removal of the case transmitted with it to this Court, as we understand the record, taken on both sides, made it apparent that the father and mother of the *feme* plaintiff lived together for twenty years as man and wife, and were reputed as such in the neighborhood, but there was no evidence that they had been actually married. A copy of a marriage bond was produced, which recited that these parties had obtained license to intermarry. The adversary evidence was of declarations made by the man, both before and after the death of his reputed wife, that he had never married her.

It may be remarked in reference to the motion, that a court of equity, in sending out an issue to be tried before a jury in a court of law, never grants a new trial, for reasons set out in the later cases of *Peebles* v. *Peebles*, 63 N. C., 656, and *Rogers* v. *Goodwin*, 64 N. C., 278, while in a proper case it might be had in the Court where the issue was tried. With the proofs before the Court, fortified by the verdict of the jury, the dismissal of the bill was wholly inadmissible.

But whatever proofs the Judge, passing upon the facts, may prescribe for his own action as needful to overcome the presumption of the legality of the intercourse continued for so

long a time, and sustained by reputation, when by death it
has ceased to exist, we know of no rule of law which permits
the Court to give so rigorous and unusual an instruction to
guide and control the jury.    While it would not be improper
in the Judge to caution the jury in considering and acting
upon the evidence, in view of its consequences, they are alone
to determine the facts, upon evidence permitted to be heard,
and producing conviction upon their own minds.    What
effect is to be given to testimony competent in law to estab-
lish a fact, belongs exclusively to the jury to determine, as
also the credibility of witnesses who give the testimony.
This is so universally recognized and acted on in the admin-
istration of the law in tribunals constituted of a judge and
jury, and exercising their separate functions, as to need no
support from references.    The error committed in the charge,
is in imposing upon a jury the rule which a Judge, passing
upon facts without a jury, prescribed for his own action, as one
which the jury is bound to obey.

Thus, it was once supposed that the unsupported testimony
of an accomplice in crime was insufficient to convict the
accused, but it has been decided that no such stubborn rule
prevails, and that such testimony "if it produces undoubt-
ing belief of the prisoner's guilt, is sufficient to warrant a
verdict affirming his guilt."    State v. Haney, 2 D. & B., 390 ;
State v. Hardin, Ibid, 407.

So it was once held (State v. Jim, 1 Dev., 508), that when
a jury find a witness swearing corruptly false in a material
matter before them, they are bound to discard his testimony
altogether upon the maxim falsum in uno, falsum in omnibus,
but upon a very thorough examination of the ruling and of
the authorities bearing upon the subject, a different conclusion
was reached and announced in Williams' case, 2 Jones, 257, in
the opinion delivered, in which PEARSON, J., thus speaks : "It
is the exclusive province of the jury to decide issues of fact,
and to pass upon the credit of witnesses.    When the credit

of a witness is to be passed on, each juror is called on to say whether he believes him or not. This belief is personal—individual—and depends upon an infinite number of circumstances ; and any attempt to regulate or control it by a fixed rule is impracticable, worse than useless, inconsistent and repugnant to the nature of a trial by jury, and calculated to take from it its chief excellence, on account of which it is preferred by the common law to any other mode of trial, and to adopt in its place, the chief objection to a fixed tribunal."

The proof seems to have been deemed by the jury amply sufficient to prove the illegitimacy of the three first born children, from whom the verdict separates the three of later birth, so that the illicit intercourse in defiance of law was kept up for a series of years, and the charge, more appropriate, given at the defendant's instance that the presumption is that the same unlawful intercourse was continued and needed rebuttal, by showing a marriage, by which its character was changed from an unlawful to a lawful sexual commerce. It is not a case of consistent reputation, accepted by the public, and the maintenance of the intercourse appropriate to the marriage relation, attempted to be subverted after death with the results to the offspring, but a case of questionable reputation and of contradicting declarations of the intestate, leaving to the jury to find upon the preponderance of evidence, if any marriage had taken place in removal of the inference to the contrary. But if this were otherwise, to direct the jury to find the fact of marriage, unless the testimony in disproof was "*so overwhelming*" as not to leave a doubt about the fact, is not sanctioned by any rule known to us, and is an unwarrantable interference with the jury as the triers of controverted facts.

The charge is not corrected, and its objectional features removed, by the reference to the second instruction to which it is subjected ; for while the latter is appropriate and pro-

per, its efficacy is neutralized by the part of the instruction to which we have adverted preceeding it. If cautionary words had been used in calling the attention of the jury to the possible consequence of a verdict declaring the illegitimacy of the plaintiffs, to induce a careful scrutiny of the evidence, it might not have overstepped the limits of judicial right, as in regard to the testimony of an accomplice; *State* v. *Hardin*, 2 D. & B., 407; or the discredit attaching to the testimony of near relations; *State* v. *Nash*, 8 Ired., 35; or to that of fellow-servants; *State* v. *Nat*, 8 Jones, 114; or the detection of a witness in a false statement upon his sworn examination; *State* v. *Smith*, 8 Jones, 132; but these matters of discredit are for the jury to weigh and consider, and are not rules of law to control the jury; *State* v. *Noblett*, 2 Jones, 418; *Wiseman* v. *Cornish*, 8 Jones, 218; *Flynt* v. *Bodenhamer*, 80 N. C., 205.

For the error in the instruction pointed out, the defendant is entitled to have the verdict set aside, and an order for a *venire de novo*, and it is so adjudged. Let this be certified.

Error.                                              Reversed.