WALTER G. FEREBEE v. NORFOLK SOUTHERN RAILROAD COMPANY.

(Filed 11 November, 1914.)

1. Evidence—Expert Witnesses—Cause and Effect of Injury.

It is competent for a medical expert, during the examination of the plaintiff in his action to recover damages of the defendant for a personal injury alleged to have negligently been inflicted by it, to indicate the wound on the plaintiff's person, and testify from its character that it had apparently been produced "by some force coming from above, carrying the head and upper part of the spine forward," and state his reasons, when relevant to the inquiry, and other competent witnesses have testified as to the manner, place, and time the injury had been received.

2. Evidence—Medical Experts—Qualification—Osteopaths.

Where the trial court has found as a fact that one testifying as a medical expert has qualified himself to give the testimony sought of him, it is

immaterial to what school of medical thought and practice the witness belongs, and an exception that the witness was an osteopath cannot be sustained.

3. **Measure of Damages—Personal Injury—Evidence—Wages—Prospective.**
    The plaintiff in his action to recover damages for a personal injury against a railroad company testified to the amount of wages he had received as brakeman, as flagman, and at the time he was injured, and that then he "had been in line for extra baggage for two or three months." *Held,* competent upon the measure of damages.

4. **Railroads—Master and Servant—Personal Injury—Actual Occupation.**
    The plaintiff, while baggage-master of the defendant, was injured, and in his action to recover damages therefor it is held that it was immaterial to the inquiry whether he was in the baggage car at the time or not.

5. **Railroads—Printed Rules—Parol Evidence.**
    A railroad company may not prove its printed rules by oral evidence of plaintiff on cross-examination.

6. **Court's Discretion—Examination of Witnesses.**
    The manner of cross-examination of a witness is very largely a matter which must be left to the sound discretion of the trial judge, which will not be held for reversible error except when palpably abused.

7. **Evidence—Measure of Damages—Nervous Conditions.**
    It is competent for witnesses who have qualified as medical experts and who had attended the plaintiff, to testify, when relevant to the measure of damages in an action for a personal injury, as to the effect on plaintiff's nervous system in amputating his arm; that they found the plaintiff "rundown and weak, with rather a troubled expression, indicating sorrow and suffering."

8. **Court's Discretion—Evidence—Witness—Repetition.**
    In this case it is held that the refusal of the court to permit defendant's medical expert witness to further testify as to the incorrect methods employed by a medical expert witness who had testified in plaintiff's behalf, is not erroneous, it appearing it was a repetition by the witness of his testimony already given upon the trial.

9. **Evidence—Irrelevant Matter—Appeal and Error.**
    The admission of irrelevant evidence, not prejudicial to the appellant, will not be held for error.

10. **Trials—Material Witnesses—Present at Trial—Matters in Excuse.**
    It is competent to show that material witnesses had been subpœnaed by the other side, and were present at the trial, for the purpose of showing why the party had not himself subpœnaed them.

11. **Appeal and Error—Error as to One Issue—Trial—Damages—Evidence.**
    Where on appeal of an action to recover damages for a personal injury no error is found as to the issues of negligence and contributory negligence, and the case is sent back for trial solely on the issue of damages, instructions bearing upon the first two issues, as, in this case, the conduct of the plaintiff on the witness stand, are properly refused.

12. Trials — Instructions — "Large Damages" — Ability to Pay—Appeal and Error.

In this case the modification of defendant's requested instructions, so as to make them read that the jury should not consider the ability of the defendant to pay "large damages," instead of "damages," if erroneous, is held as harmless error.

13. Trials—Instructions—Interested Witnesses.

A prayer for special instructions, that the expert witnesses testifying in plaintiff's behalf were inclined to view the circumstances in a favorable light for plaintiff, is objectionable as an expression of opinion by the court forbidden by statute.

14. Same—Appeal and Error—Former Appeal—Courts—Improper Remarks.

Upon the consideration to be given by the jury to the testimony of interested witnesses, *Herndon. v. R. R.*, 162 N. C., is approved and the charge of the judge is recommended as the correct form; and in this case, sent back for a new trial by the Supreme Court, it is not held for error that the trial court correctly charged upon this phase of the controversy by following the directions laid down in the former appeal, and added that he did so because the Supreme Court had held that it must be done; "but after you have done so, and you shall conclude that the witness had told the truth, you will give the same weight to his evidence that you would to that of any other credible witness."

15. Appeal and Error—New Trial on One Issue—Damages—Trials—Evidence.

Where a new trial is awarded on appeal only on the issue of damages, the plaintiff is not confined on the second trial to the evidence on this issue he has introduced on the first one, but may show other matters tending to increase the amount.

16. Appeal and Error—Objections and Exceptions—Trials—Contentions—Instructions.

Appellant should call to the attention of the trial judge, at the time, an alleged erroneous statement to the jury of his contentions, to afford him an opportunity to correct it; for otherwise it will not be considered on appeal.

17. Trials—Evidence Withdrawn—Instructions—Appeal and Error.

When the trial judge instructs the jury that certain evidence introduced is withdrawn, and they shall not consider it in their deliberations, the admission of the evidence will not be held for error, and in this action for damages for a personal injury the plaintiff's expenses for nursing were properly allowed as an element of damages.

WALKER, J., concurs in the result.

APPEAL by defendant from *Cooke, J.*, at March Term, 1914, of WAKE, in an action for the recovery of damages for personal injuries.

*Douglass & Douglass for plaintiff.*
*R. N. Simms for defendant.*

CLARK, C. J. This case was before us, 163 N. C., 351, when we directed a partial new trial, restricted to the single issue of damages. The first and second exceptions, because the trial judge submitted no other issue, need not be considered.

The third and fourth exceptions are that Dr. Richardson, who had qualified as an expert, was permitted to testify, while the plaintiff was being examined and exhibited to the jury: "This place up here (indicating) on the neck is the most serious injury of the two, and apparently has been produced by some force coming from a point above this place of injury, carrying the head and upper part of the spine forward. I state that for the reason that the neck here. . . ." The witness then proceeded to testify without objection: "My reason for stating that the conditions of this kind may be brought about for two causes: one of them is accidents or injuries in which force produces them, and the other is diseased conditions. Diseased conditions of the spine will frequently, and often do, produce deformities which resemble these in some particulars." (Page 23 of the record.)

It has always been held competent for experts to testify as to the character and extent, and to give their opinion as to the producing causes, of wounds, whether or not they were gunshot wounds or produced by sharp or blunt instruments, and to give their opinions generally as to the causes and effects of injuries. The doctor was not giving his opinion as to the manner in which the plaintiff received the injury or as to when or where it was received. Other witnesses testified as to those facts. The objection of the defendant that the doctor was an osteopath cannot be sustained. The court having found he was an expert, to what school of medical thought and practice the expert belonged is as irrelevant as to what church or political party he was affiliated with.

Exception 5, that the plaintiff testified as to his prospects of promotion, cannot be sustained. The witness said that when he was a brakeman he got from $40 to $48; when he was a flagman that he got $55 and $60, and when he was injured he was getting from $84 to $87 per month. In response to the question, "How long did you get as much as $80 ?" he replied: "I had been in line for the extra baggage two or three months." This meant, of course, that he had been extra baggage-master for that length of time. Besides, upon objection, the plaintiff withdrew the question, and to the inquiry, how long he had been drawing $80 per month, the witness replied, "Two or three months."

The sixth and seventh exceptions do not require discussion. The plaintiff was a baggage-master, but it has no bearing upon this injury to show that he was not in that car at the moment of the injury.

The eighth exception is based upon the ground that the court did not permit the defendant to prove its printed rules by oral testimony of the plaintiff on cross-examination, and is untenable.

The ninth exception is that the court permitted the plaintiff to ask the defendant's witness, Dr. Moore, "Do you want to leave the jury under the impression that the plaintiff is 'faking'?" The manner of the cross-examination is very largely a matter which must be left to the sound judgment and discretion of the learned and impartial trial judges, and this Court will not interfere except in case of palpable abuse or of injury done appellant, which does not appear to be the case in this instance. The witness was not treated with indignity, nor do we see that the defendant could be prejudiced by asking the witness if he intended to disparage the plaintiff.

Exception 10: Dr. Spillman, who had treated the plaintiff and testified as to the amputation of his arm, was permitted to state that, "in his opinion, the effect of the pain upon the general nervous system was that the patient gets nervous, can't sleep, and begins to go to pieces all over."

Exception 11: Dr. Graves was permitted to testify: "Upon examination, I found Mr. Ferebee rundown and weak, with a rather troubled expression, indicating both sorrow and suffering." These witnesses were medical practitioners, found to be experts by the court, and we cannot see that this evidence was in any way prejudicial to defendant.

Exception 12: Dr. R. L. Payne, who was admitted as an expert, testified that there were "improved methods in general use in the medical profession for the purpose of examining and demonstrating the sensations or lack of sensations in the patients," and he added that the method used by Dr. Glascock (also an expert witness) was not according to the improved method. The court refused to permit this witness to state whether or not a person could pass through such an examination as Dr. Glascock had exhibited and yet have sensation. We suppose that this exclusion was upon the ground that the witness had already testified fully and had virtually told the jury that the test made by Dr. Glascock had amounted to nothing, and a further pursuit of this subject was simply repetition calculated to give the jury no additional light upon the issue before them.

The statement of the witness, that he believed the defendant's witness, Sawyer, had feeling towards him, is the thirteenth exception. We cannot see that it was in any way prejudicial. At most, it was irrelevant.

The fourteenth exception was that the plaintiff testified that two nurses in the Norfolk hospital, who attended him after his injuries, were then in court under subpœna by the defendant. This was to show

why the plaintiff had not subpœnaed them, and that the defendant, having had an opportunity, did not put them on the stand.

The fifteenth and sixteenth exceptions, for refusal to instruct the jury, as prayed, "to consider the conduct of the plaintiff at the time of his injury," was properly refused, because on the former trial the jury had responded "No" to the third issue, "Did the plaintiff by his own negligence contribute to his injury, as alleged in the answer?" To permit that injury to be again considered in this trial, in reduction of damages, would be to try again that question, when the sole issue submitted in the new trial granted by the Court was as to "the damages sustained by the plaintiff by reason of the negligence of the defendant." The jury having already found on the former trial that there had been no contributory negligence, and this having been affirmed by this Court on appeal, the jury could not consider again the matter of contributory negligence in reduction of the damages. The former verdict had established that the plaintiff had been injured by the negligence of the defendant, and that he had not contributed to that injury, and the sole issue submitted to the jury under the direction of this Court was, therefore, as to the amount of the damages.

The court modified the prayer, "The ability of the defendant to pay damages is a matter which cannot properly be considered by you in answering the issue," by inserting the word "large" before the word "damages." We do not think that this, if error, was substantial enough to warrant a new trial, which is the sole object of taking an exception. That was the seventeenth exception. Neither can we sustain the eighteenth, which was to the refusal of the court to instruct the jury that "The medical experts who testified for the plaintiffs were naturally inclined to view the circumstances that make for the plaintiff's side in a favorable light and contrary circumstances in an unfavorable light." This would have been to express an opinion upon the weight of the evidence.

The nineteenth cannot avail, for the instructions asked were substantially given.

The defendant requested the court to charge that the plaintiff, "as a party to this action, has an interest in the outcome of such a character that it is your duty to scrutinize his evidence with care and to give due consideration to the fact that he is interested." The court gave this, but added the following: "That is the extent of your consideration, and I do this because the Supreme Court has held that it must be done. But after you have done so, and you shall conclude that he told the truth, you will give the same weight to the evidence that you would to that of any other credible witness."

We cannot, in view of the previous decisions of this Court, say that it was error in his Honor to make such addition to the prayer. In *Herndon v. R. R.,* 162 N. C., 317, the matter is fully discussed and many of the previous rulings of this Court cited in the opinion of the Court and in the dissenting opinion in that case.

In that case *Judge Justice* charged the jury, upon the weight to be given to the testimony of parties and witnesses, as follows:

"Weigh all this evidence, gentlemen, in every way; and in weighing it you have a right to take into consideration the interest that the parties have in the result of your verdict, the conduct of the witnesses upon the stand and their demeanor; the interest that they may have shown, or bias, upon the stand, if any; the means they have of knowing that to which they testify; their character and reputation, in weighing this testimony, so as to arrive at the truth of what this matter is."

In order to settle this matter for the future, we commend to the judges of the Superior Court this charge as a full and clear statement of duty of jurors in passing upon the evidence of parties when they are witnesses. We think that nothing more need be added to it. It is all that is necessary.

As to the twenty-first exception, the court properly told the jury, "At a former term of this court the issues as to negligence and contributory negligence were settled entirely. This issue was also settled at that trial; but this question we have up now has been sent back by the Supreme Court for a new trial, and that is the issue as to the quantity of the damages."

Exceptions 22 and 23 are to paragraphs of the charge which we do not find objectionable.

Exception 24 is because the court charged the jury, "While the first two issues settled the question of negligence and contributory negligence, and entitled the plaintiff to recover, when they come to introduce evidence as to the damages, they are not confined to the same damages, specific evidence of damages, as they were before." That is, that on a new trial as to damages the plaintiff is not restricted to the same evidence which he used on the former trial. This is correct. Nor was there any error in exception 25, because the court told the jury that "The plaintiff alleged and offered evidence that he is damaged in several respects besides his disability to labor," nor in exception 26, because the jury were instructed that they could not give any consideration to the issues of negligence and contributory negligence, because those two issues had been settled in the former trial.

Exception 27 is to a statement of a contention of the plaintiff, and no exception was made to it during the progress of the trial. If the statement that the plaintiff so contended was erroneous, the defendant

FEREBEE v. R. R.

should have called it to the attention of the court for correction at the time (*Jeffress v. R. R.,* 158 N. C., 215), for it was not as to a matter of law, but as to a statement of fact, which the judge should have been given opportunity to correct at the time.

Exception 28 presents exactly the same proposition, of an alleged error in stating a contention of the plaintiff.

Exception 29 is because the judge included in his charge as elements of damages "nursing" and "loss of mental powers." As to the nursing, the judge restricted the allowance for cash paid out for medical and nursing bills to $250, when the plaintiff testified that he had actually paid out between $250 and $275 for medical assistance and medicines. As to the "loss of mental powers," the judge was requested to withdraw that from the consideration of the jury as an element of damages, and the court told the jury, "That is withdrawn. You will not consider it in your deliberations."

The other exceptions were to the refusal to set aside the verdict; refusal to grant a new trial; refusal to set aside the verdict as being excessive; to the refusal of a judgment *non obstante veredicto,* and to the judgment as entered. All of these are merely formal, and are based upon the exceptions already discussed.

No error.

WALKER, J., concurring in result: The judge should have given the instruction requested by the defendant in regard to the interest of the plaintiff as a witness, without adding the qualifying clause, and without any reference to the correctness of the proposition as decided by this Court. The prayer was this: "As a party to this action, he has an interest in the outcome of such a character that it is your duty to scrutinize his evidence with care and to give due consideration to the fact that he is interested." The court gave this instruction, but added the following: "That is the extent of your consideration, and I do this because the Supreme Court has held that it must be done. But after you have done so, and you shall conclude that he told the truth, you will give the same weight to the evidence that you would to that of any other credible witness." The qualification of the instruction, as prayed for by the plaintiff, was the subject of defendant's twentieth exception. This question was considered in *Herndon v. R. R.,* 162 N. C., 317; *S. v. Vann,* 162 N. C., 534, cited and approved in *Herndon's case,* and in the case of *In re Smith's will,* 163 N. C., 464. The Court decided in the *Herndon case* (by *Justice Brown*), quoting from and approving what is said in 30 A. and E. Enc. of Law, at p. 1094, that while the testimony of a party in interest, as that of any other witness, must be submitted to the jury, the interest is a matter to be considered by the

jury in weighing the testimony and determining what force it shall have. It is very generally held proper to instruct the jury that they may take into consideration the interest of a party or other witness in determining the credibility of his testimony, and according to the weight of authority the court may instruct the jury that they should consider such interest. Instructions of this character are not objectionable as charging the jury with respect to matters of evidence, and the refusal of such instruction is error, and the error is not cured by a general instruction that the jury are the judges of the credibility of the witnesses and the weight to be given to the testimony of each, nor by an instruction that the jury are to use their common sense and experience in regard to the credibility of witnesses, citing also, for the same proposition, 38 Cyc., 1729. There was a dissenting opinion in *Herndon's case,* based upon the distinct ground that the judge should not charge the jury "that because of interest they should carefully scrutinize the evidence of the defendant," without adding that, "if the jury believe the evidence, it should have the same weight as if the witness was not interested." This was the point of plaintiff's exception in this case, that without this addition or qualification, the bare instruction that they should consider the interest of the witness in the event of the action, and give it such weight as they may think it should have, in passing upon his credibility, was indirectly an expression of opinion prejudicial to the witness, and therefore error. But the majority of the Court did not take this view, and, on the contrary, held that no such modification was necessary, or should be made, and no expression of opinion could be fairly inferred by the jury from the language used. The *Chief Justice,* dissenting from this decision, relied upon *S. v. Holloway,* 117 N. C., 732; *S. v. McDowell,* 129 N. C., 532, and other cases of a like kind. It may be admitted that there is some authority for the present contention of the appellee, that such a qualification of the general instruction is proper, but it has so recently been rejected, in explicit terms, as misleading, even if in itself sensible, that we prefer to stand by the ancient rule, which was adopted and enforced by this Court for so many years, even down to a very recent date. In *S. v. Vann,* 162 N. C., at p. 541, we expressly approved what was said in *S. v. Byers,* 100 N. C., 512, for a unanimous Court, by *Justice Ashe,* who always stated a legal principle with great accuracy and proper limitation, as follows, in regard to such testimony: "It was their duty to scrutinize the testimony (of certain witnesses) carefully, because of their interest in the result; but, notwithstanding such interest, they might believe all they had said or only a part of it, or none of it, according to the conviction produced upon their minds of its truthfulness." And there he stopped, as did the judge below in giving the charge to the jury in that case. He cited with

approval the following cases: *S. v. Nash,* 30 N. C., 35; *S. v. Nat,* 51 N. C., 114; *Flynt v. Bodenhamer,* 80 N. C., 205; *S. v. Hardee,* 83 N. C., 619; *Ferrall v. Broadaway,* 95 N. C., 551, and these are not all that he might have cited to sustain the ruling as to what is the proper instruction in the circumstances.

In *S. v. Nash, supra,* this Court sustained this as a correct instruction: "The law regards with suspicion the testimony of near relations when testifying for each other, and it is the province of the jury to consider and decide on the weight due the testimony." And so, in *S. v. Nat, supra,* this one: "When near relations depose for near relations, their testimony is to be received, and ought to be received, with many grains of allowance." In *Hardee's case, supra,* it was held that the nature of the particular caution to be given by the judge to prevent an improper use of testimony, likely to be biased, and an excessive confidence in it, must be left largely to the sound discretion of the court, no special form being required, but only such general guidance as will enable the jury to understand clearly how they may consider it, the matter being at last one upon which they must exercise their good judgment and their common sense, as to the weight that should be given to the circumstance of interest or to any other fact calculated to produce bias, and they should be freed from any arbitrary rule which would require the witness to be put upon a perfect equality with other witnesses, who, apart from any consideration of bias at all, may have more intelligence, knowledge, and character than the witness in question, and who, in other respects, have had better opportunity for information as to the matter under investigation. If the jury conclude that a party or an interested person, who testifies in the cause, has divested himself of all prejudice or leaning toward his own side, and has honestly endeavored to tell the truth, they should not stop there, but find whether he is entitled, in other respects, to their favorable consideration, by himself or in comparison with other witnesses; and yet the court instructed the jury in this case, "After you (they) have done so" (that is, found that he is honest and truthful and had no bias), "you (they) *will* give the same weight to the evidence that you (they) would to that of any other credible witness"—which means, because it so says, that he should stand upon the same base with them, when there may be many other considerations which tend to impeach his character or to weaken his testimony. If the court meant that, if in giving his testimony the witness was not influenced by his interest in the cause he is entitled to be classed as a disinterested person in weighing his testimony, the charge would have been unobjectionable, as that is a self-evident proposition, and the jury would be likely to understand it and act accordingly, without any special advice from the court; but that is not what was said,

and by the qualification to the requested instruction, the witness was presented in a better attitude than he should, perhaps, have occupied before the jury. The credit due to a witness is not determined alone by his interest, or lack of personal interest, in the cause, as a party or otherwise, but his intelligence, demeanor on the stand, character, and so forth, must be placed in the balance when weighing his testimony. This idea is well expressed by *Judge Pearson* in *S. v. Williams,* 47 N. C., 257. The learned judge in that case was referring to the rule, *falsum in uno, falsum in omnibus,* and repudiating it as an unsafe one, because no fixed rule can be formulated for gauging the jury's belief in the credibility of a witness. They may consider even one false statement he may have made during the trial as bearing upon it, but not as necessarily controlling and requiring them to disregard all of his testimony. *S. v. Hardee,* 83 N. C., at 622. The remarks of *Judge Pearson* in the *Williams case* are very pertinent here. He said: "The charge of the judge directs the attention of the jury to the question to be decided; his control over the *admissibility of evidence* excludes all that is incompetent, and the jury are relied on to find the truth. It is the exclusive province of the jury to decide issues of fact, and to pass upon the credit of witnesses; when the credit of a witness is to be passed on, each juror is called on to say whether he believes him or not; this belief is personal, individual, and depends upon an infinite variety of circumstances; any attempt to regulate or control it, by a fixed rule, is impracticable, worse than useless, inconsistent and repugnant to the nature of a trial by jury, and calculated to take from it its chief excellence, on account of which it is preferred by the common law to any other mode of trial, and to adopt in its place the chief objection to a fixed tribunal. 'Do I believe what that witness has sworn to?' is a question for each juror. The statement may be more or less probable, and in accordance with the way in which men act and things occur. It may be more or less corroborated by the testimony of other witnesses and the attendant circumstances. The manner of the witness, even his looks, may impress my mind more or less favorably, and this is the reason every witness is required, by the common law, to be examined in the presence of the jury. Is it practicable to frame a general rule by which my belief must be regulated?" And I ask the same question in this case. Commenting upon this passage, taken from the opinion of *Judge Pearson* in the *Williams case, Chief Justice Smith* said, in *Ferrall v. Broadaway,* 95 N. C., at p. 559: "The charge is not corrected, and its objectionable features removed, by the reference to the second instruction to which it is subjected; for while the latter is appropriate and proper, its efficacy is neutralized by the part of the instruction, to which we have adverted, preceding it. If cautionary words had been used in calling

the attention of the jury to the possible consequence of a verdict declaring the illegitimacy of the plaintiffs, to induce a careful scrutiny of the evidence, it might not have overstepped the limits of judicial right, as in regard to the testimony of an accomplice (*S. v. Hardin,* 19 N. C., 407); or the discredit attaching to the testimony of near relations (*S. v. Nash,* 30 N. C., 35); or to that of fellow-servants (*S. v. Nat,* 53 N. C., 114); or the detection of a witness in a false statement upon his sworn examination (*S. v. Smith,* 53 N. C., 132); but these matters of discredit are for the jury to weigh and consider, and are not rules of law to control the jury. *S. v. Noblett,* 47 N. C., 418; *Wiseman v. Cornish,* 53 N. C., 218; *Flynt v. Bodenhamer,* 80 N. C., 205." Numerous other authorities could be cited to the same effect, which strongly support the view herein taken.

This question has undergone discussion very recently in the case of *In re Smith,* 163 N. C., 464. It is true, counsel there insisted that, in directing the jury how to pass upon the testimony of interested witnesses, it was not sufficient for the judge, as was done in that case, to charge merely that the jury might consider any bias they may have had (if any at all) by reason of their relation to the parties in the cause, but that he should have added that if the jury found that they were not influenced thereby they should have the same credit as any other witness, as was said in *S. v. Holloway,* 117 N. C., 732; and that with reference to this suggestion as to the addition, we stated that no such special instruction was asked, and therefore the point was not directly raised. But the Court, after stating preliminarily that the instruction should not have been so qualified if the special request had been made, observed substantially that if the jury had decided that the witnesses were not biased by their interest or relationship, they should not necessarily have received the credit due to other witnesses, and put upon an equality with them, as the credit to which they were entitled depended, not upon their bias or indifference alone, but upon other circumstances as well—as, for example, their intelligence and their appearance and deportment while on the stand; their character, whether good or bad; their means of knowledge; the probability of their story—these and other matters entered into the estimate of the value to be attached to the testimony of the witnesses, and the jury had the right to put them in the scales, in weighing the testimony, for the purpose of separating the true from the false and finally ascertaining where was the preponderance of the evidence. It may be proper for a judge to tell the jury "that if the witness is not biased by his interest, his testimony should have the same weight as if he was not interested," as said in some of the cases, for this is a truism, and a sensible jury would not overlook it. It is a proposition that proves itself; but it does not mean that the witness

shall occupy a position of equality with another who has a better character, more sense and knowledge of the facts, a stronger memory, superior judgment, and whose other qualities and advantages inspire the jury with greater confidence in his credibility. Speaking of the rule of the common law, whereby parties to and persons interested in the event of an action were disqualified, this Court said in *Hill v. Sprinkle,* 76 N. C., 353: "For generations past, and up to the last few years, interest in the event of the action, however small, excluded a party altogether as a witness, and that upon the ground, not that he may not sometimes speak the truth, but because it would not ordinarily be safe to rely on his testimony. This rule is still applauded by great judges as a rule founded in good sense and sound policy. The parties to the action are now competent witnesses, but the reasons which once excluded them still exist, to go only to their credibility." We think that this change in the law of evidence was a wise and salutary one; but it did not abolish the other rules of evidence, and the jury should not be handicapped by an imperative instruction that, in the absence of bias of some who are interested, they should give credit to all the witnesses equally, as those who have had no interest may, in other respects and apart from any consideration of bias or impartiality, be more reliable. It is undoubtedly true that interest naturally produces bias, for we have been told that, "If self the wavering balance shake, it's rarely right adjusted"; but. notwithstanding this tendency of his nature, and his frailty, the witness may resist the temptation which thus besets him and prove himself to be worthy of credit. *Smith v. Moore,* 142 N. C., 277. If he is not in fact prejudiced by his relation to the cause or the parties, the jury may then consider whether there are other circumstances which impair the strength of his testimony, such as want of intelligence, character, knowledge of the facts, and so forth. The subject has so recently been fully discussed in this Court that further comment is unnecessary. *Herndon v. R. R.,* 162 N. C., 317. See, also, *S. v. Vann,* 162 N. C., 534, which, while not so authoritative as it would have been had the question been directly presented for decision, is nevertheless worthy of serious consideration, as in itself correct, and especially as being fully in line with the cases which have been decided here and elsewhere for nearly a century.

Referring again to *Judge Pearson's* clear and vigorous statement of the law, as applicable to such cases, we cannot safely or wisely bind the jury by any "hard and fast rule," but should leave them at full liberty to judge of a witness's credibility in view of all the surrounding circumstances, his interest and probable bias being among them.

Let the jury consider the interest of the witness—as they are very apt to do, whether they are so instructed or not—and give it such weight, or no weight, as in their judgment it should have. This is the safest and

best rule, to leave the matter as much at large as possible, trusting to the intelligence and honesty of the jury to so balance the facts as to give to the witness, whose interest is involved, his due proportion of credit or discredit. This view was entertained by the Court also in *Herndon v. R. R., supra,* where, through *Justice Brown,* who wrote the opinion, it approved this charge given below: "His Honor, after charging fully, fairly, and correctly on each issue, concluded his charge with these words, to which plaintiff excepts, towit: 'Weigh all of this evidence, gentlemen, in every way, and in weighing it you have a right to take into consideration the interest that the parties have in the result of your verdict, the conduct of the witnesses upon the stand and their demeanor, the interest that they may have shown, or bias, upon the stand, the means they have of knowing that to which they testify, their character and reputation, in weighing this testimony, so as to arrive at the truth of what this matter is.. Take the case, gentlemen.'" In this connection it may be said that the rule to be found in 30 A. and E. Enc. of Law, 1094, and 38 Cyc., 1729, and stated above, was adopted in that case as the true one and as sustaining the charge, without any addition or qualification whatsoever. Though there was a dissent in *Herndon v. R. R., supra,* there was none in the case of *In re Smith's will, supra,* where the question was more sharply and formally stated, and discussed with full reference to the authorities.

For these reasons I would dissent from the judgment of this Court and the opinion, as I think the judge came dangerously near to the expression of his personal opinion upon the weight of testimony in his reference to what had been decided by this Court, and also that he laid down an erroneous rule in regard to interested witnesses, refusing the simple and correct instruction, as requested by defendant's counsel. As said in 38 Cyc., p. 1772: "It is improper for a judge to weaken the force of a proper instruction by sarcastic comment (or any expression of his opposition to the settled principle), so as to leave the jury in doubt whether the instruction was given or refused, or by intimating that, although the instructions given in behalf of a party are correct, they present a loose and inadequate presentation of the law applicable to the case, or to intimate that his personal opinion is otherwise than the law he charges." But after a most careful review of the entire record, I am convinced that the error worked no substantial disadvantage to the defendant, and that, all things considered, the case has been fairly and correctly decided upon its real merits, and the error, therefore, is not sufficient for a reversal. The Court, at a former term, had passed upon the questions of negligence which are involved, unfavorably to the defendant (163 N. C., 351), and another trial may be still worse for it, as the damages have been increased, so far, in "arithmetical progression," and practical wis-

dom dictates that it is better to halt here than to risk a steady and "harmonic progression" hereafter. I therefore concur in the result.

As the opinion of the Court is *now* worded, I hardly know what the law has been declared to be. It is very certain that *Herndon v. R. R.,* 162 N. C., 317, decides, by the clearest implication, that the addition to the prayer in this case was error. The entire instruction, as given, falls under the condemnation of *Hill v. Sprinkle,* 76 N. C., 353, cited and quoted from at length in *Herndon v. R. R., supra,* which says: "At all events, the charge is not such a clear and distinct enunciation of an important principle or fact as could leave any reasonable doubt of its meaning in the minds of the jury. The prayer was distinct, and the response should have been equally so." This is an important question, and should be decided finally, one way or the other, for the charge is either erroneous in law or not so, and the question should not be left open in the way of a mere suggestion to the judges. The addendum is clearly harmful, if it is not correct, as it gives the interested witness a credit to which he is not entitled, by ranking him with those who are disinterested and are better qualified, in every way, to testify as to the facts.