The indictment charges the defendant in three counts:
1. With the manufacture and aiding and abetting in the manufacturing of intoxicating liquor.
2. Did keep and possess materials, substance and property designed for the manufacture of liquor, etc.
3. Did have and keep on hand intoxicating liquor for the purpose of being sold, etc.
The defendant plead not guilty to the charge. The jury returned a verdict of guilty. The court below rendered judgment. Defendant excepted, assigned errors, and appealed to the Supreme Court.
N. F. Britt testified, in part, as follows: "I am a Baptist minister and the pastor of Corinth Baptist Church, at Ingleside, Franklin County. I have been pastor for that church about five years; that I have known the defendants, Clifton Dickerson, Hurley Dickerson, Jesse Dickerson, John Holden, and Hubert Holden, for the time I have been pastor of the Corinth Baptist Church. Some time previous to 7 November, 1924, I discovered in some woods on the Franklin County poorhouse land two barrels of beer, which is the kind used in distilling liquor. In company with Bennett Faulkner, I *Page 329 
watched these two barrels of beer for three nights in succession, expecting some one to engage in manufacturing the stuff into liquor. On the night of 7 November, 1924, with Bennett Faulkner, I concealed myself in an open space of the woods, about sixty yards from the place where the two barrels of beer were standing. We went there about 7 o'clock and stayed until past 9. While we were there, a party of men came up to the still site and proceeded to begin operations. They set up the still nearer to me than I had expected. They cut wood and built up a fire, and by the light of the fire I recognized the parties mentioned, to wit, Hurley, Jesse, and Clifton Dickerson, John Holden and Hubert Holden. I saw Clifton Dickerson standing close by the fire, and pretty soon he came out near where I was lying and cut a sourwood bush about as big as my wrist, and I recognized it as being Clifton Dickerson for sure. After cutting down the sourwood bush, he took his axe and beat one end of it upon a stump, making a ladle out of it, and carried it back to the still, where it was used for stirring the beer in the kettle. I saw him cutting wood and moving about with the others. He stayed out near where I was, when cutting the bush down, about five minutes. I saw the still on the fire, and saw one of the men pouring the beer into the still. We remained there about two hours, and left the men operating the still."
F. Bennett Faulkner testified, in part, as follows: "I saw Clifton Dickerson cutting wood, and also saw him cut the sourwood bush and beat up the end on a stump to make something to stir the beer with. I saw him starting the fire. We stayed there about two hours, and left them operating the still."
Clifton Dickerson, defendant, testified, in part, as follows: "I am a married man, 25 years of age, and have three children. I live about 7 1/2 miles from the place where Mr. Britt said I was distilling. I was not distilling and never have had any dealings with whiskey or been connected with it in any way. On the night of 7 November, 1924, I was at home, hanging tobacco in my pack-house. I was not at that still. Mr. Jack Goswick was with me from 6 o'clock that night until 12 o'clock. While we were hanging tobacco, Arch Higgs, an old colored man who worked with me, came by the pack-house about 9 o'clock that night while we were hanging tobacco. I have never been convicted of any violation of the law in court." Dickerson was corroborated by Jack Goswick and Arch Higgs.
Otha Hayes testified: "I had a conversation with Mr. Britt, the prosecuting witness of the State, in the presence of the defendant, Clifton Dickerson, and Mr. Britt stated to me at first that he saw Clifton Dickerson at the still, and then said he could not swear that he had seen him, but somebody else could." *Page 330 
Mr. Britt, recalled, testified: "That he did not tell Mr. Clifton Dickerson, in the presence of Otha Hayes, that he did not see him at the still, but told Mr. Dickerson that he had seen him at the still and would swear to it at the proper time."
Several witnesses testified to defendant's good character, and several witnesses testified to defendant's bad character for the last three years.
There were no errors assigned to the charge of the court below.
The defendant, Clifton Dickerson, sets up in his own behalf an alibi. If the evidence of himself and his witnesses are to be believed, he was not guilty. The issue before the jury, under the plea of not guilty, was whether Clifton Dickerson was at the still, doing the acts as testified to by the State's witnesses. The jury was satisfied of defendant's guilt, beyond a reasonable doubt, and found him guilty. Defendant contends that he should be granted a new trial, for errors committed on the trial in the court below.
The first group of assignments of error were to the following questions asked Mr. Britt, State's witness, and answers thereto:
"Q. Where are the defendants, Hurley Dickerson and Jesse Dickerson? Answer: `They have run away.'
"Q. Where does Hurley Dickerson live? Answer: Witness answered that he lived near Ingleside."
We must get the setting of the case. Mr. Britt testified, without objection, that he knew Clifton Dickerson, Hurley Dickerson, Jesse Dickerson, John Holden, and Hubert Holden. They proceeded to begin operations — they set up the still. "They cut wood and built up a fire." Mr. Britt knew them all and recognized them by the light of the fire. The parties were not jointly indicted and tried, but only the defendant Clifton Dickerson was on trial. Mr. Britt was the main prosecuting witness. He had watched and was mainly responsible for the prosecution. The question would naturally arise, as Mr. Britt saw the others at the still, why was Clifton Dickerson alone indicted? To single out one to be prosecuted, without the others, would seriously affect the credibility of the testimony of Mr. Britt. The inquiry would be, what has become of Hurley and Jesse Dickerson? The prosecution wanted to explain the absence of men whom Mr. Britt saw operating the still and who should be indicted. To account for their absence it was necessary to show that they had fled. Where Hurley Dickerson lived was immaterial. We think the questions and answers admissible, under the facts and circumstances of this case. In fact, the whole contest between the State and the defendant was as to the identity of the defendant. Was he in the party? The fact that Hurley and Jesse Dickerson fled *Page 331 
was only a circumstance to be considered as to their guilt, and in no way affected the guilt of defendant. The fact that defendant stood his trial was, no doubt, used to show his innocence, and the ancient proverb called into play:
 "The wicked flee when no man pursueth; But the righteous are bold as a lion."
We cannot hold the questions and answers either erroneous or prejudicial. Flight is only a circumstance against the party who fled.
In S. v. Case, 93 N.C. 546, it is said: "In criminal cases every circumstance that is calculated to throw light upon the supposed crime is admissible. S. v. Swink, 19 N.C. 9. The fact that immediately after the discovery of a crime, the person charged with its commission flies (fled), is admitted as a circumstance to be considered by the jury. S. v. Nat,51 N.C. 114. So it is held that if the prisoner, when arrested, attempts to make his escape, or attempts to bribe the officer to let him escape, the evidence is admissible. 11 Ga. 123; Fanning v. State of Missouri,14 Mo., 386; Dean v. Commonwealth, 4 Grattan, 541; 26 Ia., 275."
In S. v. Tate, 161 N.C. 286, it is held: "But such flight or concealment of the accused, while it raised no presumption of law as to guilt, is competent evidence to be considered by the jury in connection with the other circumstances. 12 Cyc., 395; 21 Cyc., 941."
It is well settled in this State that no act, declaration or confession of one of the joint actors in a crime occurring after the crime has been completed — in other words, after the joint enterprise has ended — is admissible against any of the actors except himself. 2 Wharton Crim. Ev., secs. 699 et seq.; S. v. Haney, 19 N.C. 390; S. v. Rumple,178 N.C. p. 717; S. v. Connor, 179 N.C. p. 752.
If Hurley and Jesse Dickerson had been on trial, their flight would only be a circumstance or some evidence to be considered by the jury in connection with other evidence and circumstances as to their guilt.
The other exceptions and assignments of error were to questions and answers on cross-examination, asked the defendant Clifton Dickerson. They are as follows:
"Q. Where was Hurley Dickerson and Jesse Dickerson that night? Answer: `I do not know.'
"Q. Is Jesse Dickerson your brother? Answer: `Yes.'
"Q. Have you got to the point that you do not want to claim kin with your brother, Jesse? Answer: `No.'
"Q. Where does Jesse Dickerson live? Answer: `He lives with my father.' *Page 332 
"Q. How far does your father live from the still site? Answer: `About 7 miles.'
"Q. Where does Jesse Dickerson live? Answer: `He lives near Henderson.'"
It will be noted that all these questions are asked defendant on cross-examination. The defendant was not bound to become a witness. C. S., 1799, is as follows:
"In the trial of all indictments, complaints, or other proceedings against persons charged with the commission of crimes, offenses or misdemeanors, the person so charged is, at his own request, but not otherwise, a competent witness, and his failure to make such request shall not create any presumption against him. But every such person examined as a witness shall be subject to cross-examination as other witnesses. Except as above provided, nothing in this section shall render any person, who in any criminal proceeding is charged with the commission of a criminal offense, competent or compellable to give evidence against himself, nor render any person compellable to answer any question tending to criminate himself."
When defendant became a witness, he was subject to cross-examination as any other witness. "When the prisoner went upon the stand as a witness in his own behalf he put his character in evidence, and was subject to impeachment. In S. v. Cloninger, 149 N.C. 572, the Court said: `The accused, by becoming a witness in his own behalf, is liable to cross-examination to impair his credit like any other witness, and the cross-examination is not restricted to matters brought out on the direct examination.'" S. v. Bailey, 179 N.C. p. 728.
The cross-examination is not confined to matters brought out on the direct examination, but questions are permissible to impeach, diminish or impair the credit of the witness. These questions often take a wide range, but should be confined to questions within the bounds of reason — the materiality is largely left to the discretion of the court. The cross-examination here was largely an effort to impeach witness' credibility by connecting him with his relations who were alleged to be at the still. The State's evidence was direct and positive, that both Hurley and Jesse Dickerson were with the defendant, Clifton Dickerson, that night, working at the still. These questions put to the defendant when he was on the stand were legitimate cross-examination tending to contradict his direct testimony that he was not at the still that night and never had any dealings with whiskey or been connected with it in any way. The answers to the questions sustained defendant's contention, that he had nothing to do with the still. It was for the jury to say what version they believed. *Page 333 
The utility of cross-examination is bringing out, from the witness himself, facts to lessen his credit. The largest possible scope should be given, but this is left chiefly to the discretion of the trial court. "Throughout all the ensuing sorts of evidence, then, there is to be understood a general canon that on cross-examination the range of evidence that may be elicited for any purpose of discrediting is to be very
liberal.' 2 Wigmore on Evidence (2 ed.), part of sec. 944.
The 17th exception is to the admission of evidence over the defendant's objection, which evidence was given by the defendant on cross-examination. The following question was asked by the solicitor:
"Q. Did Mr. Britt talk to you and tell you to stop distilling before 7 November? Answer: `Mr. Britt talked to me sometime in October, and told me that he heard that I was in the whiskey business and had better stop. I told him that I was not in the whiskey business and had never been in it.'" In his charge his Honor withdrew this evidence and instructed the jury not to consider it.
We think if the testimony was error, it was nullified by the court below withdrawing its consideration from the jury. S. v. Apple, 121 N.C. p. 585.
The last exception was to the refusal of the court below to allow a motion to set aside the verdict of guilty and for a new trial on the ground of newly discovered evidence, as stated in the affidavit set out in full in the record. This was in the sound discretion of the court below.
This case was mainly one of identity. Defendant relied solely on an alibi. The defendant was found guilty beyond a reasonable doubt. It was a question of fact for the jury that we cannot deal with. In law, there is
No error.